RODERIC G. and JOAN M. BARTON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Barton v. Commissioner
Docket No. 10030-78.
United States Tax Court
T.C. Memo 1980-179; 1980 Tax Ct. Memo LEXIS 402; 40 T.C.M. (CCH) 382; T.C.M. (RIA) 80179; May 21, 1980, Filed *402 Roderic G. Barton, pro se. Richard L. Schanerman and Ruth E. Salek, for the respondent. TANNENWALD
MEMORANDUM FINDINGS OF FACT AND OPINION TANNENWALD, Judge: Respondent determined a deficiency of $2,090.64 in petitioners' 1975 income taxes. Concessions having been made, the issues for decision are whether petitioner Roderic G. Barton's automobile racing was an activity engaged in for profit, and whether petitioners are entitled to a deduction for depreciation in connection with that activity. FINDINGS OF FACT Some of the facts were stipulated and are found accordingly. The stipulation of facts, together with the exhibits attached thereto, is incorporated herein by this reference. Petitioners are husband and wife, who resided in Frewsburg, New York, at the time the petition herein was filed. They filed a joint Federal income tax return for the year 1975. The term "petitioner" in the singular will be used hereinafter to refer to Roderic G. Barton. Petitioner became interested in car racing in the early 1950's, when he participated in building stock cars. A stock car is an ordinary automobile altered to increase horsepower, speed, and handling capacity. At that time he did not *403 race the cars himself. Petitioner withdrew from this activity for several years because of business commitments and the economic demands of raising a family. In 1968, petitioner acquired a modified sportsman and began to drive competitively. Modified sportsman is the name of a class of stock car with a minimum weight of 2,500 pounds. In 1975, in order to compete nationally in the modified sportsman class, a car costing approximately $15,000 would have been needed. Petitioner raced primarily at two dirt tracks, Stateline in Busti, New York, and Eriez Raceway in Erie, Pennsylvania. The racing season at those tracks ran from the first weekend in May until the first weekend after Labor Day. The races were held on Saturdays and Sundays and approximately 22 races were held at each track. A first-place finish at either track paid $300. Petitioner had never known anyone to win more than half of the races in one season. During the years petitioner drove competitively, he was licensed by the National Association for Stock Car Auto Racing, Inc. In 1976, petitioner raced for the first time in Daytona, Florida, at Daytona International Speedway. He finished 47th out of 50 cars. Petitioner *404 lost money in 1968, his first year of racing. Petitioner reported gross receipts, expenses, and net losses from car racing on his Federal income tax returns for the years 1970 through 1976 as follows: [1]
Expenses
Gross
(including "cost
Year
Receipts
of goods sold")
Net Loss
1970
$ 880.00
$2,640.00
$ 1,760.00
1971
1,217.50
3,262.50
2,045.00
1972
825.00
1,647.00
822.00
1973
495.00
*
*
1974
1,663.00
6,652.00
4,989.00
1975
1,193.00
7,882.00
6,689.00
1976
2,075.00
8,446.00
6,371.00
Petitioner retained only some receipts for racing expenditures. He did not maintain a separate checking account for his racing activities. He kept a notebook for recording information which would aid in properly preparing his automobile for a race. Petitioner was assisted by two individuals when racing. One worked without pay and the other was given a percentage of any winnings. Petitioner gets great personal pleasure from automobile racing. He also flies an airplane and water skis. During 1968 and subsequent years, when petitioner *405 was racing, he spent 50 hours a week working in his electrical contracting business and depended primarily on his earnings from that business to support his family. Petitioner Joan M. Barton also earned income in at least some of those years. Petitioners reported on their income tax returns for the years 1971 through 1976 the following amounts of employee compensation: 1971
$ 8,047.18
1972
4,111.00
1973
2,737.00
1974
12,330.00
1975
14,230.00
1976
14,366.00
On their 1974 return, petitioners claimed $3,000 for depreciation on a racer acquired that year at a cost of $3,000. In 1975, petitioner had two race cars: the car acquired in 1974 and another acquired in 1975 at a cost of $4,200. OPINION The first issue for decision is whether petitioner's car racing constituted a trade or business, as petitioners contend, or an activity not engaged in for profit, as respondent contends. Section 183(a) [2] provides that "if such activity is not engaged in for profit, no deduction attributable to such activity shall be allowed under this chapter except as provided in this section." Section 183(b)(1) allows those deductions which would be allowable without regard to whether or not such activity is engaged *406 in for profit. Section 183(b)(2) provides that deductions which would be allowable only if such activity is engaged in for profit shall be allowed "but only to the extent that the gross income derived from such activity for the taxable year exceeds the deductions allowable by reason of paragraph (1)." Section 183(c) defines an "activity not engaged in for profit" as "any activity other than one with respect to which deductions are allowable for the taxable year under section 162 or under paragraph (1) or (2) of section 212." The test for determining whether an activity is engaged in for profit is whether the individual engaged in the activity with the primary purpose and intention of making a profit; the taxpayer must have a bona fide expectation of realizing a profit, although such expectation need not be reasonable. Section 1.183-2(a), Income Tax Regs.; Engdahl v. Commissioner,72 T.C. 659, 666 (1979); Golanty v. Commissioner,72 T.C. 411, 425-426 (1979), on appeal (9th Cir., Aug. 31, 1979). Whether the petitioners had the requisite intention is a question of *407 fact to be determined on the basis of all the facts and circumstances. Allen v. Commissioner,72 T.C. 28, 34 (1979); Dunn v. Commissioner,70 T.C. 715, 720 (1978), affd. on another issue 607 F.2d 995 (2d Cir. 1979). The burden of proof is on the petitioners ( Golanty v. Commissioner,supra at 426; Boyer v. Commissioner,69 T.C. 521, 537 (1977), on appeal (7th Cir., July 7, 1978)), with greater weight given to objective facts than to the petitioners' mere statement of their intent. Section 1.183-2(a), Income Tax Regs.; Engahl v. Commissioner,supra at 666; Churchman v. Commissioner,68 T.C. 696, 701 (1977). See H. Rept. 91-413 (Part 1), 1969-3 C.B. 200, 245; S. Rept. 91-552, 1969-3 C.B. 423, 490. No one factor is conclusive and thus we do not reach our decision herein by merely counting the factors enumerated in section 1.183-2(b), Income Tax Regs., which support each party's position. Dunn v. Commissioner,supra at 720. Petitioner had a consistent history of losses from his stock car racing activity over a period of years (see p.4, supra) -- one which reflected an increasing loss trend. See Golanty v. Commissioner,72 T.C. at 426-427. Although petitioners reported a small amount *408 of gross receipts from racing in 1973, they appear to concede on brief that a loss was incurred in that year but not reported, because their income was sufficiently low that any such loss would not have had any tax effect. Granted that losses in the formative years of a business are not necessarily inconsistent with an intention to achieve a later profitable level of operation, there is simply insufficient evidence in the record before us to enable us to conclude that petitioner's activity had the potential for future profitability to support a finding that he had a bona fide intention to make a profit. Bessenyey v. Commissioner,45 T.C. 261, 274 (1965), affd. 379 F.2d 252 (2d Cir. 1967). By the end of the taxable year before us, petitioner appears to have had losses in excess of $16,000. See Golanty v. Commissioner,72 T.C. at 427. In that year and prior years, he raced at two local racetracks, Eriez and Stateline, during the regular racing season, which consisted of approximately 22 races at each track. The prize money for first place in any of these races was only $300. This is not a situation, therefore, where a few races won could have placed petitioner's operations in the *409 profit column. [3] Petitioner testified that he was among the top ten competitors at Eriez and Stateline in 1975, yet he still reported a loss of over $6,000 that year. Moreover, he testified that he had never seen any individual win more than one-half of the races in one season and a diary submitted by petitioner indicates that because of rain or other unspecified reasons, petitioner actually participated in less than 30 races in 1975. Additionally, although not entirely clear, the record suggests that to achieve a top competitive level, a substantially higher investment in race cars than that made by petitioner would have been required. Furthermore, one of petitioner's assistants was entitled to a percentage (which petitioner did not specify) of any winnings. Although petitioner testified that he made changes in his cars after incurring losses, such testimony was vague and did not convince us that he had taken any action which could have led him to expect that his future activities would reverse the pattern of his prior losses. Sec. 1.183-2(b)(1), Income Tax Regs. Compare Churchman v. Commissioner,68 T.C. at 702; Bolt v. Commissioner,50 T.C. 1007, 1014 (1968). We *410 note that, although petitioners argue that there were large amounts of prize money to be won in races in Florida and at various other racetracks and in certain special events, there is no evidence in the record to show that in 1975, or any prior year, petitioner participated in such races or events. The only evidence in regard to races other than those which comprised the regular season at the two local racetracks indicates that petitioner first participated in a race in Florida in 1976 and placed 47th out of 50 cars and that in a later year he once more raced in Florida. [4] *411 Similarly, although petitioner testified that drivers were awarded points according to where they placed in races and that such points resulted in the receipt of prize money at the end of a raining season, he presented no evidence to show the correlation between points and prize money or to substantiate his testimony that money was earned through the scoring of points. [5]
Other factors support our conclusion that petitioners did not engage in racing for profit. Although business and pleasure are not mutually exclusive, [6] the fact that an activity has recreational aspects is relevant in determining whether or not an activity is engaged in for profit. Petitioner testified that he derived great personal pleasure from car racing and also enjoyed other activities, i.e., flying an airplane and water skiing, which, like car racing, involve the use of high-speed machinery. In addition, petitioner did not conduct his racing activities in a businesslike manner. See section 1.183-2(b)(1), Income Tax Regs. While he saved receipts for some of his expenses, he did not maintain a separate bank account for his racing activities and kept no other regular books and records. His failure to conduct his racing in a businesslike manner was clearly illustrated at trial when he admitted that he kept no records of the cost of trucks which he used in connection with car racing. On the basis of the entire record and the foregoing *412 analysis, we conclude that petitioner's stock car racing was an activity not engaged in for profit and that the deductibility of expenses attributable thereto is limited by section 183. [7]
With respect to the depreciation issue, petitioners have not carried their burden of proving that they were entitled to a deduction of $2,500. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure. Their argument that they presented the requisite substantiation to respondent's agents during the audit process is no substitute for submitting the requisite evidence at trial. See Jackson v. Commissioner,73 T.C. 394, 400 (1979). Wisconsin Butter & Cheese Co. v. Commissioner,10 B.T.A. 852, 854 (1928). Because of concessions by the parties, Decision will be entered under Rule 155.
Footnotes
1. Respondent accepts the figures reported by petitioner as correct for purposes of this case, except for $2,500 claimed as a depreciation expense in 1975, the taxable year in issue.↩
*. Not reported; see p. 8, infra.↩
2. All section references are to the Internal Revenue Code of 1954, as amended and in effect in the taxable year at issue.↩
3. Compare Demler v. Commissioner,T.C. Memo. 1966-117↩.
4. There is a indication that a Dick Barton from Falkoner, New York, won $315 in the 2d Annual Permatex Modified 200 in 1975, but the record does not convince us that the person listed was petitioner. In any event, even if he were, our ultimate conclusion herein would not be affected. 5. See Zimmermann v. Commissioner,T.C. Memo. 1976-123↩.
6. See McDonell v. Commissioner,T.C. Memo. 1967-18↩.
7. See also Whitener v. Commissioner,T.C. Memo. 1979-415↩.