THOMAS G. SMITHSI and ROZA SMITHSI, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Smithsi v. Commissioner
Docket No. 10677-78
United States Tax Court
T.C. Memo 1981-652; 1981 Tax Ct. Memo LEXIS 89; 42 T.C.M. (CCH) 1638; T.C.M. (RIA) 81652; November 9, 1981. Isidore R. Tucker, for the petitioners. Vincent R. Barrella, for the respondent. WILBUR
MEMORANDUM FINDINGS OF FACT AND OPINION WILBUR, judge: Respondent determined a deficiency in petitioners' Federal income tax for 1974 in the amount of $ 968.18. [1] In contrast, petitioners claimed an overpayment of their 1974 taxes in the amount of $ 5,036. The issues for our decision are (1) whether petitioner Thomas G. Smithsi's transfer of $ *92 23,067.81 on October 26, 1976 to a purported Individual Retirement Account constituted a tax-free rollover of the lump-sum distribution received by him from the R.C.A. retirement plan in 1974 and (2) whether the $ 831.07 in interest paid to petitioner Thomas G. Smithsi as a result of the delay in distributing his plan benefits is taxable as ordinary income or capital gain. [2]
FINDINGS OF FACT Some of the facts have been stipulated and are so found. The petitioners, Thomas G. Smithsi and Roza Smithsi, husband and wife, resided in Eastchester, New York at the time *93 they filed their petition in the instant case. They filed a timely joint Federal income tax return for 1974 with the Internal Revenue Service. Petitioner Thomas G. Smithsi (hereinafter "Smithsi") had been employed by R.C.A. Institutes, Inc. (hereinafter "RCA"), a subsidiary of the R.C.A. Corporation, for a period of 19 years prior to 1974. For 16 of these years, petitioner had been a participant in the R.C.A. retirement plan (hereinafter "plan"). Smithsi's employment with RCA was terminated on May 24, 1974 as a result of a phaseout of RCA by its parent, the R.C.A. Corporation. In accordance with section 17 of the plan, Smithsi's participation in the plan was also terminated as a result of these events. Smithsi was notified by letter dated August 7, 1974 that he was being offered a choice of four options concerning his rights under the plan. Smithsi elected the option allowing for a single-sum, or lump-sum payment. On or about November 15, 1974, Smithsi received a lump-sum distribution of $ 40,719.39 from the plan. The $ 40,719.39 consisted of $ 6,511.25 contributed by Smithsi, $ 31,648.06 allocated to Smithsi pursuant to plan section 17, interest income of $ 1,729.01 *94 on Smithsi's contribution, and five months additional interest amounting to $ 831.07. The additional interest of $ 831.07 was paid to Smithsi as a result of RCA's delay in transmitting the $ 39,888.32 due him from his election of a single-sum payment. On November 15, 1974, Smithsi deposited $ 20,000 of the proceeds in one bank account at the Bowery Savings Bank, and $ 20,719.39 in another account at the same bank. Petitioners customarily drew sums of money from one of the savings accounts at the Bowery Savings Bank. On approximately June 20, 1975, as a result of an error in the original calculation of his benefits under the plan, Smithsi received an additional distribution of $ 32,097.11 from the plan. This additional distribution was deposited in petitioners' joint checking account at the Chemical Bank. On or about May 9, 1976, Smithsi read an article which was published in the May 9, 1976 edition of the New York Daily News. Based upon the information contained in such article, Smithsi decided to attempt a rollover of the lump-sum distribution he had received on or about November 15, 1974. Smithsi then went to the Internal Revenue Service offices in New York City in *95 order to obtain clarification of the information contained in the article. He was told to file an amended income tax return for the taxable year 1974. On May 24, 1976 Smithsi first acted upon his idea of establishing an Individual Retirement Account (hereinafter "IRA") by filing an amended individual income tax return for the taxable year 1974, requesting a refund of $ 5,036. After filing the refund claim, Smithsi wrote numerous letters to the Internal Revenue Service and made various trips to the Internal Revenue Service offices to ascertain whether his amended return had ever been received and whether anything else was required of him to properly effect a tax-free rollover. Petitioner was finally advised by the Service to roll over the distribution he had received. Pursuant to such advice, petitioner withdrew $ 23,067.81 from his account at the Bowery Savings Bank. On October 26, 1976, petitioner deposited the $ 23,067.81 into an account purporting to be an Individual Retirement Trust account at the Bowery Savings Bank. ULTIMATE FINDINGS OF FACT Smithsi's actions beginning in May of 1976 did not constitute a timely rollover of the lump-sum distribution received by him *96 from the plan on or about November 15, 1974. OPINION Petitioner Thomas G. Smithsi was employed by RCA, a subsidiary of the R.C.A. Corporation, for 19 years prior to 1974 and was a participant in the RCA retirement plan for 16 of those years. Smithsi's employment with RCA was terminated and he elected to receive his plan benefits as a single-sum payment. On November 15, 1974, Smithsi received a distribution of $ 40,719.39 from the plan. On May 24, 1976, Smithsi first acted upon his idea of rolling over the distribution into an IRA by filing an amended tax return for the taxable year 1974. On October 26, 1976, Smithsi deposited $ 23,067.81 of the distribution into an account purporting to be an IRA. For purposes of this decision, the $ 40,719.39 received by petitioner consists of four payment classifications: $ 31,648.06 - allocated to Smithsi under the plan 1,729.01 - interest on Smithsi's contributions 6,511.25 - Smithsi's contributions 831.07 - 5 months additional interest as a result of a delay in distribution On their 1974 return, petitioners reported the $ 31,648.06 as long-term capital gain. Respondent allowed such treatment but determined that the $ 1,729.01, *97 which petitioners omitted from their return represents interest on Smithsi's contribution and was taxable as ordinary income. Respondent now concedes that if this Court finds that a valid rollover was not effected, the $ 1,729.01 is taxable as long-term capital gain. In addition, respondent amended his answer to include the $ 831.07 in petitioners' gross income as ordinary income. The petitioners now allege that no portion of the $ 40,719.39 lump-sum distribution is includable in their gross income and accordingly seek a refund. [3]
*98 The two issues for our decision are: (1) whether Smithsi's transfer of $ 23,067.81 on October 26, 1976 to a purported IRA constituted a tax-free rollover of the lump-sum distribution received by him from the RCA retirement plan, and (2) whether the $ 831.07 in interest paid to Smithsi as a result of the delay in distributing the plan benefits is taxable as ordinary income or capital gain. Issue 1. Rollover of Distribution
Section 402(a)(5)(B)(i), [4] as in effect during 1974, requires that a distribution must be rolled over within 60 days of receipt to be exempt from tax. Petitioner contends that although he failed to comply with this requirement, his attempted rollover was validated by the transitional rules of section 4(d)(2) of Pub. L. 95-458, 92 Stat. 1255, 1260 (October 14, 1978) (hereinafter Pub. L. 95-458) and section (d)(1) of Pub. L. 94-267, 90 Stat. 365, 367 (April 15, 1976) (hereinafter Pub. L. 94-267). Respondent contends, however, that the purported rollover was not timely effected under section 402(a)(5)(B)(i) and that petitioner does not meet the requirements of either *99 section 4(d)(2) of Pub. L. 95-458 or section (d)(1)(A) of Pub. L. 94-267. Therefore, respondent claims that the $ 33,377 portion of the distribution is taxable as long-term capital gain under section 402(a)(2). We agree with respondent. As in effect during 1974, section 402(a)(5) required that all the property, exclusive of the employee's contribution, received in a lump-sum distribution as defined in section 402(e)(4)(A)[5] be transferred to an IRA within 60 days of receipt in order for the transaction to qualify as a tax-free rollover. In the instant case, Smithsi received such distribution on November 15, 1974 but did not deposit a portion in the Bowery IRA account until October 26, 1976, nearly two years later. Therefore, the attempted rollover was far wide of the mark under section 402(a)(5)(B)(i). *100 Pub. L. 95-458, Section 4(d)(2)
Petitioner, however, seeks to rely on the provisions of Pub. L. 95-458, section 4(d)(2) to validate the attempted rollover. Public Law 95-458, enacted on October 14, 1978, amended section 402(a)(5) and also validated certain attempted rollovers for taxable years beginning before the enactment of the Act (October 14, 1978). Section 4(d) of that Act provides: (d) EFFECTIVE DATES-- (2) VALIDATION OF CERTAIN ATTEMPTED ROLLOVERS.--If the taxpayer-- (A) Attempted to comply with the requirements of section 402(a)(5) or 403(a)(4) of the Internal Revenue Code of 1954 for a taxable year beginning before [October 14, 1978], and (B) failed to meet the requirements of such section that all property received in the distribution be transferred, such section (as amended by this section) shall be applied by treating any transfer of property made on or before December 31, 1978, as if it were made on or before the 60th day after the day on which the taxpayer received such property. For purposes of the preceding sentence, a transfer of *101 money shall be treated as a transfer of property received in distribution to the extent that the amount of the money transferred does not exceed the highest fair market value of the property distributed during the 60-day period beginning on the date on which the taxpayer received such property. [6]
The intent of Congress in enacting section 4(d)(2) was to validate partial rollovers of a lump-sum distribution. S. Rept. No. 95-1127 (1978), 1978-2 C.B. 369, 370 provides in pertinent part: 4. Partial rollovers of lump-sum distributions.--Under present law, an individual who is eligible to make a tax-free rollover contribution of amounts distributed from a qualified retirement plan is required to contribute the entire amount of the distribution to an IRA or to another qualified plan. The committee amendment allows an individual to make a rollover contribution of any portion *102 of the distribution. In addition, the amendment provides a special "makeup" rule for individuals who, prior to enactment of the bill, attempted to make a rollover contribution but failed to transfer the entire amount of the distribution. Such persons are allowed to make a rollover contribution of any portion of the distribution to an IRA or to a qualified retirement plan on or before December 31, 1978 or 60 days after enactment of the amendment, whichever is later. [Emphasis added.] It is clear from the statute and Senate Report that in order for petitioners to come within the provisions of Pub. L. 95-458, section 4(d)(2), two events must have occurred: (1) there must have been an attempt to comply with the requirements of section 402(a)(5), and (2) that this attempt must have been ineffective because the recipient failed to transfer all of the property received in the distribution to an IRA. Whether an individual attempted to roll over a distribution is a question of fact. In this case, Smithsi did not attempt to comply with the 60-day requirement of section 402(a)(5)(B)(i). Smithsi deposited the amounts received in a personal bank account, and retained complete dominion *103 and control over these funds for nearly two years. During this entire period he had the right to disburse them in the same manner as any other income he received. He first decided to attempt a very belated rollover after reading an article which was published in the May 9, 1976 edition of the New York Daily News. He did not take any action towards effecting a rollover until May 24, 1976, when he filed his amended return for 1974 and did not deposit any funds into a purported IRA until October 26, 1976. Although Smithsi made several visits to the Internal Revenue Service offices to obtain advice in effecting a rollover, these events occurred after May 1976. Smithsi's failure to comply with section 402 resulted from his failure to attempt a rollover within 60 days after the receipt of the distribution and not from his failure to transfer all of the property received in the lump-sum distribution to an IRA. Consequently, the relief provision of section 4(d)(2) of Pub. L. 95-458 is not available to validate Smithsi's transfer of funds on October 26, 1976. [7]
*104 Smithsi testified at trial that he made numerous visits to the Internal Revenue Service offices and wrote numerous letters to the Service in order to obtain advice on the procedures to follow in effectuating a tax-free rollover. He suggests that he was frustrated in his attempt to establish a tax-free rollover by the misstatements and delay of the Service. However, as we pointed out previously, Smithsi made no attempt to contact the Service regarding his desire to effect a tax-free rollover before May, 1976, long after the 60 days had expired. Furthermore, the fact that Smithsi may not have received advice from the Service after requesting it, or that respondent's agents may have incorrectly stated the law does not alter the result herein. It is the statute which governs the determination of petitioner's substantive tax liability, and the mistakes the Service makes, while understandably nettlesome to petitioner, do not alter this rule. See Demirjian v. Commissioner, 54 T.C. 1691, 1701 (1970), affd. 457 F.2d 1 (3d Cir. 1972). See also Automobile Club of Michigan v. Commissioner, 353 U.S. 180 (1917). *105 Therefore, since Smithsi did not attempt to comply with the 60-day requirement of section 402(a)(5)(B)(i), he is not entitled to the relief afforded by Pub. L. 95-458, section 4(d)(2). Pub. L. 94-267, Section (d)(1)
Petitioner also relies on Pub. L. 94-267 to validate the October 26, 1976 transfer of funds. Petitioner contends that the transitional rules found in section (d)(1), of Pub. L. 94-267 gave him additional time, until December 31, 1976, to roll over the lump-sum distribution received by him on November 15, 1974. Public Law 94-267 amended section 402(a)(5) by expanding the definition of the type of distribution qualifying for tax-free rollover treatment. Prior to the enactment of Pub. L. 94-267 only a lump-sum distribution, as defined in section 402(e)(4)(A), qualified for tax-free rollover treatment. [8] After the enactment of Pub. L. 94-267, distributions paid to an employee which represented payments on account of the termination of the plan or the complete discontinuance of contributions under the plan, were also eligible for tax-free rollover treatment. [9] The intent *106 of Congress in enacting Pub. L. 94-267 is set forth in H. Rept. No. 94-1020 (1976), 1976-1 C.B. 529, 530, which provides in pertinent part: [10]
*107 General reasons for change
It has been brought to your committee's attention that in a significant number of cases employers terminate plans and distribute their assets even though the employees continue to work for the same employers. This may happen, for example, when an employer is acquired by another corporation and becomes a subsidiary of that other corporation. Your committee has concluded that, in such a case, an employee who wishes to recommit those funds to some sort of tax-qualified retirement vehicle (e.g., tax-qualified pension plan or IRA) or to a profit-sharing or stock bonus plan should be permitted to do so on the same basis as an employee under present law whose distribution qualifies as a lump sum distribution. This tax-free rollover treatment is to apply to a distribution which would be a lump sum distribution but for the fact that it is made on account of a termination of the plan or a complete discontinuance of contributions under the plan. This treatment is also to be made available in certain situations involving sales of subsidiaries and divisions of corporations. The transitional rules of Pub. L. 94-267, section (d)(1)(A) extended until December 31, 1976, the *108 requirement that the distribution be rolled over within 60 days of receipt. Section (d)(1)(A) of Pub. L. 94-267, provides as follows: (A) PERIOD FOR ROLLOVER CONTRIBUTION.--In the case of a payment described in section 402(a)(5)(A) (other than a payment described in section 402(a)(5)(A) as in effect on the day before the date of the enactment of this Act) or section 403(a)(4)(A) (other than a payment described in section 403(a)(4)(A) as in effect on the day before the date of the enactment of this Act) of the Internal Revenue Code of 1954 (relating to distributions of the balance to the credit of the employee) which is contributed by an employee after the date of the enactment of this Act to a trust, plan, account, annuity, or bond described in section 402(a)(5)(B) or 403(a)(4)(B) of such Code, the applicable period specified in section 402(a)(5)(B) or 403(a)(4)(B) of such Code (relating to rollover distributions to another plan or retirement account) shall not expire before December 31, 1976. [Emphasis added.] As the parenthetical language of section (d)(1) and the House Report make clear, the transitional rule extends the 60-day period until December 31, 1976 only for *109 distributions which did not previously qualify for tax-free rollover treatment pursuant to section 402(a)(5) in effect prior to the enactment of Pub. L. 94-267. The distribution received by Smithsi qualified as a lump-sum distribution pursuant to the provisions of section 402(e)(4)(A)(iii) when it was received by him on November 15, 1974. [11] Thus, petitioner does not qualify for the relief afforded by Pub. L. 94-267. Accordingly, we hold that the attempted rollover of October 26, 1976 was not timely. Therefore, the $ 31,648.06 of the allocated plan benefits and the additional $ 1,729.01 in interest received by Smithsi as part of the lump-sum distribution are taxable to petitioner as *110 long-term capital gain in 1974 under section 402(a)(2). Issue 2. Characterization of $ 831.07 Additional Interest
Smithsi's election of a single-sum payment resulted in a liability due him from the plan in the amount of $ 39,888.32. As a result of a delay in transmitting these benefits, RCA paid to petitioner 5 months additional interest amounting to $ 831.07. The issue is whether the $ 831.07 is taxable to petitioner as ordinary income or capital gain. Section 402(a)(2) allows capital gains treatment for lump-sum distributions attributable to pre-1974 active participation in an employee trust described in section 401(c), which is exempt from tax under section 501(a). Under section 402(e)(4)(A), a lump-sum distribution means the balance to the credit of an employee which becomes payable to a distributee, interalia, on account of the employee's separation from the service. Section 1.402(a)-1(a)(6)(ii), Income Tax Regs., provides, in part, that a distribution on separation from service will not receive capital gains treatment unless it *111 constitutes the total amount in the employee's account at the time of his separation from service. In the present case, the $ 831.07 was credited to petitioner's account subsequent to the date of the termination of the service. Thus, such amount was not part of the balance which became payable to petitioner on account of separation from service. Accordingly, the $ 831.07 of additional interest is taxable as ordinary income under section 61(a)(4) in 1974, the year of distribution. Decision will be entered for the respondent. Footnotes
1. Of this amount, $ 674 represents the original deficiency determined by respondent in his statutory notice of deficiency and $ 294.18 represents the additional amount asserted by the respondent in his amended answer. Since Roza Smithsi is a petitioner herein solely by reason of filing a joint return, Thomas G. Smithsi will be referred to as petitioner. ↩
2. The additional deficiency of $ 294.18 asserted by respondent in his amended answer is attributable to the additional interest of $ 831.07. Respondent bears the burden of proof as to this issue. See Rule 142(a), Tax Court Rules of Practice and Procedure.↩
3. Since respondent asserted a deficiency with respect to petitioners' 1974 return, this Court has jurisdiction to determine any overpayment by petitioners. Sec. 6512(b)(1). In addition, since petitioners paid the tax for 1974 before the date the notice of deficiency was mailed (August 30, 1978) and their refund claim (filed May 24, 1976) had not been disallowed at the date the deficiency notice was mailed, the limitation in sec. 6512(b)(2) is inapplicable. See sec. 6512(b)(2)(C)(i). However, only the amount timely rolled over is tax exempt. Sec. 402(a)(6)(C). Absent a timely rollover, the amount attributable to his employer's contribution and the interest thereon ($ 33,377) would be taxable to petitioner as long-term capital gain. See sec. 402(a)(2), which provides in pertinent part: In the case of an employee trust described in section 401(a), which is exempt from tax under section 501(a), so much of the total taxable amount (as defined in subparagraph (D) of subsection (e)(4)) of a lump sum distribution as is equal to the product of such total taxable amount multiplied by a fraction-- (A) the numerator of which is the number of calendar years of active participation by the employee in such plan before January 1, 1974, and (B) the denominator of which is the number of calendar years of active participation by the employee in such plan, shall be treated as a gain from the sale or exchange of a capital asset held for more than 6 months [9 months for taxable years beginning in 1971; 1 year for taxable years beginning after December 31, 1977]. * * *↩
4. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue, unless otherwise indicated.↩
5. Sec. 402(e)(4)(A) defined a lump-sum distribution qualifying for the tax free 60-day rollover under sec. 402 as follows: For purposes of this section and section 403, the term "lump sum distribution" means the distribution or payment within one taxable year of the recipient of the balance to the credit of an employee which becomes payable to the recipient.-- (i) on account of the employee's death, (ii) after the employee attains age 59 1/2, (iii) on account of the employee's separation from the service, or (iv) after the employee has become disabled * * *↩
6. Subsecs. (a), (b), and (c) of P.L. 95-458 amended sec. 405(a)(5) to permit partial rollovers and provide for taxation of the portion not rolled over. However, these provisions apply to years beginning after December 31, 1974, and petitioner recognizes on brief they are inapplicable to him.↩
7. Cf. Handy v. Commissioner, T.C. Memo. 1981-411 (taxpayers not entitled to benefit from sec. 4(d)(2) of Pub. L. 95-458 since there was no attempt to comply with old sec. 402(a)(5)↩ until after the enactment of Pub. L. 95-458).
8. Sec. 402(a)(5), prior to the enactment of Pub. L. 94-267, read in pertinent part: ROLLOVER AMOUNTS.--In the case of an employees' trust described in section 401(a) which is exempt from tax under section 501(a), if-- (A) the balance of the credit of an employee is paid to him in one or more distributions which constitute a lump sum distribution within the meaning of subsection (e)(4)(A) (determined without reference to subsection (e)(4)(B)). ↩
9. Sec. 402(a)(5), as amended by Pub. L. 94-267, read in pertinent part: ROLLOVER AMOUNTS.--In the case of an employees' trust described in section 401(a) which is exempt from tax under section 501(a), if-- (A) the balance to the credit of an employee is paid to him-- (i) within one taxable year of the employee on account of a termination of the plan of which the trust is a part or, in the case of a profit-sharing or stock bonus plan, a complete discontinuance of contributions under such plan, or (ii) in one or more distributions which constitute a lump-sum distribution within the meaning of subsection (e)(4)(A) (determined without reference to subsection (e)(4)(B)), The amendment is now found in sec. 402(a)(5)(D)(i). As discussed supra, Pub. L. 95-458 further amended sec. 402(a)(5)↩ to validate partial rollovers of a lump-sum distribution. 10. Sec. 402(a)(5)↩ as amended by Pub. L. 94-267 applies to distributions made to employees on or after July 4, 1974. Thus, the amendment, if otherwise applicable, would apply to the distribution received by Smithsi on November 15, 1974.
11. It is clear that the distribution was made on account of petitioner's separation from the service of R.C.A. Institute and therefore qualified as a lump-sum distribution under sec. 402(e)(4)(A), supra n. 5. See H. Rept. No. 94-1020 (1976), 1976-1 C.B. 529, 530; Cf. Smith v. United States, 460 F.2d 1005, 1017 (6th Cir. 1972); Miller v. Commissioner, 22 T.C. 293, 301 (1954), affd. per curiam 226 F.2d 618↩ (6th Cir. 1955).