FREDERICK J. TASSINARI, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Tassinari v. Commissioner
Docket No. 31440-81.
United States Tax Court
T.C. Memo 1984-445; 1984 Tax Ct. Memo LEXIS 226; 48 T.C.M. (CCH) 915; T.C.M. (RIA) 84445; 5 Employee Benefits Cas. (BNA) 2020; August 21, 1984. Frederick J. Tassinari, pro se. Mae J. Lew, for the respondent. RAUM
MEMORANDUM FINDINGS OF FACT AND OPINION RAUM, Judge: The Commissioner determined a $4,085 deficiency *228 in petitioner's 1978 Federal income tax. The sole issue for decision is whether a distribution from a profit-sharing plan is currently taxable. FINDINGS OF FACT [1]
Some of the facts have been stipulated and are incorporated herein by this reference. Petitioner Frederick J. Tassinari resided in West Peabody, Massachusetts, when he filed his petition herein. *229 From at least 1968 until the summer of 1981, petitioner was an employee of the Cutter Fire Brick Co., Inc. (Cutter), [2] and, from 1968 through 1977, a participant in its profit-sharing plan (Plan). On December 31, 1977, Cutter terminated the Plan. The Internal Revenue Service was notified of such termination and approved it by letter "issued" September 21, 1978. Pursuant to the Plan's termination, petitioner received the following distributions during 1978 from "The Cutter * * * Profit Sharing Trust" (Trust): April 28, 1978
$ 2,000.00
June, 1978
1,300.00
October 18, 1978
11,271.95
TOTAL
$14,571.95
All of these proceeds resulted from employer contributions. The $1,300 distributed in June 1978 constituted the proceeds of life insurance policies. The $14,571.95 total represented petitioner's entire interest in the Trust. A letter dated September 30, 1978, explaining the termination *230 of the Plan, was apparently sent to each of the employee-participants in the Plan, and was signed by petitioner and C. Thomas Cutter, each as "Trustee". [3] One copy of that letter was addressed to petitioner. The letter set forth certain considerations relating to the taxability of the distributions. In this connection, the letter stated: To avoid the tax on your interest in the Plan you may: a) "roll over" [i.e., reinvest] the distribution within sixty (60) days from receipt into an Individual Retirement Account [IRA] (the attached booklet explains all details of an IRA); or b) have the Trustees purchase a deferred annuity which will not be taxable until you begin to receive payments from the annuity. In addition, the letter "strongly" urged the employee-participant to consult his "tax advisors", and offered the assistance of Cutter's attorney and accountant. *231 Petitioner was unable to reinvest the entire $14,571.95 of Trust distributions since he had already spent or disposed of the $3,300 representing the first two payments and he "did not [then] have" such funds available. He therefore made inquiries to ascertain whether he could make a tax-free rollover [4] of only a portion of the payments into an IRA. Although he made many inquiries along these lines, he was unable to obtain any satisfactory assurances that he could make a tax-free partial rollover. Accordingly, notwithstanding that he was aware of the 60-day limitation, [5] as shown in the foregoing letter signed by him as Trustee, he did not make any attempt to transfer any portion of the distributed funds to an IRA within 60 days of the last distribution (October 18, 1978). *232 Thereafter, on December 27, 1978, petitioner invested $11,000 of the distributions in a six-month certificate of deposit at the Framingham Trust Company, Framingham, Massachusetts. This certificate matured in the amount of $11,535.04 on June 27, 1979. Petitioner used $2,159.55 of this amount to pay his 1978 Federal and State tax "deficiency", and, on July 13, 1979, he deposited the remaining $9,375.49 in the Waltham Savings Bank, Waltham, Massachusetts. On February 15, 1980, he placed $11,119 in a six-month certificate of deposit at the First East Savings Bank, Peabody, Massachusetts, and subsequently, at six-month intervals, at least until the date of trial, has reinvested all proceeds with respect to this investment in similar six-month certificates. Petitioner had not reached age 59-1/2 nor was he self-employed during 1978. In reporting the $14,571.95 of distributions on his 1978 Federal income tax return, petitioner apparently elected to utilize the special ten-year averaging formula found in section 402(e)(1), I.R.C. 1954. In his deficiency notice herein, the Commissioner disallowed this election on the ground that petitioner continued to work *233 for Cutter, and increased petitioner's 1978 taxable income by the amount of the distributions. The parties now agree that petitioner's use of the ten-year averaging formula was inappropriate. The issue at present is whether petitioner may escape paying tax currently on that portion of the distributions which he invested in the six-month certificate of deposit. OPINION Congress has provided special tax advantages for employers and employees relating to qualified pension, profit-sharing and stock bonus trusts. See generally sections 401 through 415, I.R.C. 1954. In the main, the foregoing comprehensive and detailed legislative scheme affords deductions to employers for contributions to such trusts, section 404(a), but allows the employee-beneficiaries of the trusts to postpone until a later date paying a tax not only in respect of such contributions, but also in respect of the earnings of the trusts. Section 402(a)(1). Moreover, the trusts themselves are tax exempt. Section 501(a), I.R.C. 1954. We must deal here with the $14,571.95 *234 distributions made by a qualified profit-sharing trust to petitioner in 1978. The general rule is set forth in section 402(a)(1), and provides that any amount "actually distributed" by an employees' trust that is exempt from tax under section 501(a) shall be taxable to the employee-distributee. However, an exception is made to the general rule in section 402(a)(5) relating to "rollovers", and the relief which petitioner seeks is based on the contention that his purchase of an $11,000 certificate of deposit on December 27, 1978, qualified for exclusion from gross income within the meaning of the statute. We hold otherwise. Section 402(a)(5)(A) provides that where the balance to the credit of an employee in a qualified trust is paid to him in a "qualifying rollover distribution", and the employee "transfers any portion [6] of * * * [the] distribution to an eligible retirement plan * * * then such distribution (to the extent so transferred) shall not be includible in gross income for the taxable *235 year in which paid". At the outset, we have no doubt, and the Government does not contend otherwise, that the distributions here satisfy all the preliminary requirements that must be met in order to come within section 402(a)(5)(A) and the definition of "qualifying rollover distribution" in section 402(a)(5)(D)(i). Thus, petitioner's entire balance in the profit-sharing plan was paid to him within one taxable year upon the termination of the plan and there was a complete discontinuance of contributions under the plan. However, petitioner's claim founders upon the further requirement in section 402(a)(5)(A)(ii) that the employee's transfer of the distribution (or any portion thereof) be made to "an eligible retirement plan". He made no such transfer in this case. He merely invested $11,000 on December 27, 1978, in a certificate of deposit. Such a transfer plainly was not to an eligible retirement plan, as will shortly appear. *236 The term "eligible retirement plan" is defined in section 402(a)(5)(D)(iv), as follows: [7]
(iv) Eligible Retirement Plan.--The term 'eligible retirement plan' means-- (I) an individual retirement account described in section 408(a), (II) an individual retirement annuity described in section 408(b) (other than an endowment contract), (III) a retirement bond described in section 409, (IV) a qualified trust, and (V) an annuity plan described in section 403(a). Petitioner's purchase of an $11,000 certificate of deposit cannot by any stretch of the imagination come within any of the five types of reinvestment that could qualify as an "eligible retirement plan". We consider each of them briefly. 1. Individual retirement account, *237 familiarly known as an IRA. Here, the IRA must be one described in section 408(a). But section 408(a) defines an "individual retirement account" as a "trust * * * for the exclusive benefit of an individual * * * but only if the written governing instrument creating the trust" (emphasis supplied) meets seven separately enumerated conditions. The certificate of deposit purchased by petitioner certainly could not be characterized as a "trust" on any theory, and we need not even undertake any study of the seven highly specific requirements, although a casual inspection persuades us that most, if not all, of them would defeat any contention that they were satisfied here. The certificate of deposit was not an IRA. 2. Individual retirement annuity. Clearly the certificate of deposit was not an annuity of any kind. 3. Retirement bond described in section 409. A retirement bond is defined in section 409(a) as emaning a bond issued under the Second Liberty Bond Act, as amended, which *238 by its terms or by regulations prescribed by the Secretary of the Treasury satisfies a number of highly specific conditions. The certificate of deposit in this case is certainly not a retirement bond described in section 409. 4. Qualified trust. The certificate of deposit was not a trust of any kind. 5. Annuity plan. The certificate of deposit did not involve any annuity or "annuity plan" whatever. We accordingly must hold that petitioner's purchase of the certificate of deposit did not qualify as an "eligible retirement plan", and he therefore fails to satisfy the requirements of section 402(a)(5)(A) for exclusion of his distribution from taxable income. However, petitioner contends that there is a special provision in the amendatory legislation of October 14, 1978, that calls for a different result. He argues that since he "attempted" to comply with the provisions of section 402(a)(5) he should be deemed to have actually complied with such provisions by reason of section 4(d)(2) of Pub. L. 95-458, 92 Stat. 1255, 1260 (1978), referred to in fn. 6, supra.
Section 4 of Pub. L. 95-458 is captioned "PARTIAL ROLLOVERS OF LUMP SUM DISTRIBUTIONS". It was intended *239 to deal primarily with partial rollovers of trust distributions, by including partial rollovers within the section 402(a)(5) exception to section 402(a)(1). The purpose of the new provisions was made clear by the Senate Finance Committee, as follows (S. Rept. No. 95-1127, 95th Cong., 2d Sess. 2 (1978), 1978-2 C.B. 369, 370): 4. Partial rollovers of lump-sum distributions.--Under present law, an individual who is eligible to make a tax-free rollover contribution of amounts distributed from a qualified retirement plan is required to contribute the entire amount of the distribution to an IRA or to another qualified plan. The committee amendment allows an individual to make a rollover contribution of any portion of the distribution. And, in recognition of the fact that section 402(a)(5)(C) requires that a rollover be made within 60 days of the receipt of a distribution, it was thought necessary to extend that period in the case of taxpayers who had theretofore unsuccessfully "attempted" to make a partial rollover. In this respect, the Senate Finance Committee further stated *240 (S. Rept. No. 95-1127, 95th Cong., 2d Sess. 2 (1978), 1978-2 C.B. at 370): In addition, the amendment provides a special "makeup" rule for individuals who, prior to enactment of the bill, attempted to make a rollover contribution but failed to transfer the entire amount of the distribution. Such persons are allowed to make a rollover contribution of any portion of the distribution to an IRA or to a qualified retirement plan on or before December 31, 1978 or 60 days after enactment of the amendment, whichever is later. The "special 'makeup' rule" just referred to by the Senate Finance Committee emerged as section 4(d)(2) of Pub. L. 95-458, which reads as follows: (d) Effective Dates.-- * * * (2) Validation of Certain Attempted Rollovers.--If the taxpayer-- (A) attempted to comply with the requirements of section 402(a)(5) or 403(a)(4) of the Internal Revenue Code of 1954 for a taxable year beginning before the date of the enactment of this Act, and (B) failed to meet the requirements of such section that all property received in the distribution be trasnferred, such section (as amended by this section) shall be applied by treating *241 any transfer of property made on or before December 31, 1978, as if it were made on or before the 60th day after the day on which the taxpayer received such property. In short, section 4(d)(2) of Pub. L. 95-458 provided relief for those taxpayers who had attempted but failed to comply with the requirement of section 402(a)(5) that the entire distribution be rolled over to an eligible retirement plan, and it extended the time within which such taxpayers could make a permissible rollover to December 31, 1978. Accordingly, assuming that petitioner had otherwise complied with these new provisions, he did not in fact make any partial rollover within the period as thus extended. His investment in the certificate of deposit which was made on December 27, 1978, did not qualify as a permissible partial rollover to an eligible retirement plan, as we have already explained. Section 4(d)(2) of Pub. L. 95-458 was obviously intended merely to validate attempted partial rollovers theretofore made and to extend through December 31, 1978, the 60-day period within which to make a partial rollover. Cf. Smithsi v. Commissioner,42 T.C.M. 1638, 1641, 50 P-H Memo T.C. par. 81,652 (1981). *242 It was never intended to dispense with all the other requirements of section 402(a)(5), particularly that the rollover be made to an "eligible retirement plan". That petitioner may not have learned about the new provisions until it was too late for him to take advantage of them is indeed unfortunate, but we are without power to authorize a departure from the precise and detailed requirements of the statute. Decision will be entered for the respondent.
Footnotes
1. In his brief filed after the trial petitioner presented certain evidence, including some documents, which neither party had introduced at trial. Because such documents were proffered ex parte and petitioner's recitations of alleged facts were not made under oath at the trial, we may not take such evidence into account in making our findings of fact. Rule 143(b); West 80th Street Garage Co., Inc. v. Commissioner,12 B.T.A. 798, 800 (1928); Wisconsin Butter & Cheese Co. v. Commissioner,10 B.T.A. 852, 854↩ (1928). Indeed, petitioner was explicitly cautioned at the conclusion of the trial when the Court was setting the dates for the filing of briefs that the materials dealt with in his brief "may not include any facts other than the facts that have been produced at this hearing".
2. As part of his testimony, petitioner submitted a "Statement of Circumstances" in which he stated that he ceased working for Cutter in 1980, not "the Summer of 1981" as stipulated by the parties. This inconsistency is immaterial with respect to our decision herein.↩
3. We note, but do not find, that a copy of this letter was among those documents offered by petitioner with his brief (see fn. 1, supra) and that this copy was in all respects identical to the original which the parties had submitted at trial except↩ that petitioner no longer appeared as a signatory, that his signature and designation as "Trustee" appears to have been completely blanked out, and that the copy was signed only by C. Thomas Cutter as "Trustee".
4. The term "tax-free rollover" is used merely as a convenient locution to indicate that the distribution would be tax-free by reason of the rollover. ↩
5. The 60-day limitation was based upon a requirement to that effect that was specifically set forth in sec. 402(a)(5)(B) of the Internal Revenue Code as in effect at the time of the letter of September 30, 1978, and in sec. 402(a)(5)(C) of the Code as amended on October 14, 1978. See fn. 6, infra.↩
6. The provision permitting a tax-free rollover in respect of only a portion of the distribution was introduced into the Code by section 4 of Pub. L. 95-458, which was enacted on October 14, 1978. 92 Stat. 1255,1257. We will comment more fully hereinafter upon this amendatory legislation and its retroactive effect. It will sometimes be referred to as the Act of October 14, 1978, or as Pub. L. 95-458.↩
7. The quoted provision is from the amendatory Act of October 14, 1978, see fn. 6, supra,↩ but the substance of this language had already been in the Code, and we regard the newer formulation merely as clarifying in character. Section 4(d)(1) of that amendatory legislation made it applicable to "taxable years beginning after December 31, 1974".