WISCONSIN BUTTER & CHEESE CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 8105.   Promulgated February 17, 1928.

*Charles B. Quarles, Esq.*, for the petitioner.
*Shelby S. Faulkner, Esq.*, for the respondent.

## OPINION.

Phillips: The petitioner in this proceeding, seeking assessment under sections 327 and 328 of the Revenue Act of 1918, contends that its income and capital in 1919 were affected by abnormal conditions. It produces testimony to show that had it made its sales through brokers, the cost would have been approximately $80,000. Counsel argues that since such sales were handled by two of its officers who were paid about $10,000, there was a saving of $70,000 which creates an abnormality in its income. The argument does not appear to be sound. The return filed by the petitioner shows that, in addition to officers' salaries, substantial amounts were deducted from its gross income, some of which, such as " general expense," " telephone and telegraph," " advertising," " auto expense," " auto repairs," " brokerage and commission," " commercial agencies," " traveling expense," " postage," " audit and legal," " stationery and office supplies," and " salary " (other than " factory labor "), appear to include expenditures which properly relate to selling as well as manufacturing cost. If sales had been made through a broker, presumably such selling costs would not have fallen on the petitioner. We are satisfied that when all the costs of selling are considered there was no such difference in the cost of the two methods as is contended.

There is a further consideration which cannot be overlooked. The petitioner, having the choice of either setting up its own sales department or selling its products through a broker, chooses the first method. Thereby it undertakes to pay all the costs which may be incurred, regardless of the success or failure which attends its efforts. Had it followed the other method, it would have paid only upon the basis of results accomplished. When, having assumed the risks which attach to the first method, it finds that the cost has been less than would have been the case had it followed the second method, it does not seem to us that any abnormality results. It represents only the application of good business judgment. Had it developed that the cost of selling through a broker would have been less than selling direct, there would have been no warrant for failing to allow as deductions any part of the actual selling expenses on the ground that they were not necessary expenses of the business. Yet this seems to be the converse of the argument that a saving resulting from choosing one of the two methods creates an abnormality in taxable income.

While the sales efforts were very successful, due perhaps in some part to the reputation and standing built up by petitioner over a period of years, there is nothing to indicate that the salaries paid were not adequate, that these officers could have obtained more elsewhere, or that others, equally effective, could not have been obtained for the same salary. We find no abnormality in the income of the petitioner.

Petitioner, in seeking a special assessment, further contends that the exclusion of the value of its good will from its invested capital in 1919 was an abnormal condition affecting its capital for that year.

We have no doubt that there was a substantial good will, but we are unable from the record made before us to determine whether or not it was excluded from invested capital either in whole or in part, or, if so, what relationship the amount excluded bears to the invested capital allowed. In its brief petitioner refers to certain records not in evidence before us to establish what amount was determined to be its invested capital and assumes not only that the amount allowed is established but that such amount includes nothing for good will. On many occasions the Board and its Members have had occasion, in decisions and otherwise, to point out that the proceeding before it is *de novo* and that we have before us only such evidence as the parties submit. In such a proceeding as this it is incumbent on the petitioner not only to establish a value for its good will, but, where not established by the pleadings, to show that such good will has not been included in invested capital, and the relationship which the value excluded bears to the invested capital allowable, before we are in a position to consider the very interesting legal question whether the exclusion of good will which may have been built up in the business, and therefore can not be included in invested capital, could, under any circumstances, be considered to create an abnormality of capital within section 327 of the Revenue Act of 1918.

*Decision will be entered for the respondent.*