## C. P. CHAMBERLIN, ET AL., PETITIONERS,* v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 27598, 27599, 27600, 27601, 27602, 27603.    Promulgated April 30, 1952.

*Raymond H. Berry, Esq.*, and *Ralph W. Barbier, Esq.*, for the petitioners.

*A. J. Friedman, Esq.*, for the respondent.

---

*Proceedings of the following petitioners are consolidated herewith: Grace A. Chamberlin; John H. Toner; Benjamin James Carl; Guy V. Schrock; Robert Pierce and Josephine H. B. Pierce, Husband and Wife.

**OPINION.**

Tietjens, *Judge:* The petitioners contend that the essential facts material to a decision are that the Metal Company had only one class of stock outstanding, namely, voting common, on December 28, 1946, on which date it distributed a pro rata stock dividend of its preferred shares; that thus the facts herein parallel those in *Strassburger* v. *Commissioner*, 318 U. S. 604; and that accordingly the rule in the cited case is conclusive of the present controversy in favor of petitioners. We do not agree. Without discussing the *Strassburger* case at the present time, it is our opinion that the issue presented of whether the stock dividend of preferred on common constituted income to the stockholders (petitioners) must be determined from a consideration of all the facts and circumstances surrounding the issuance of such dividend and not by a consideration limited to the characteristics of the stock declared as a dividend.

Congress has provided generally in section 22 (a) of the Internal Revenue Code for the inclusion in gross income of "dividends" and has defined that term in section 115 (a) of the Code.[3]   However, Congress qualified both of those provisions by section 115 (f) (1)[3] which excludes a *stock dividend* to the extent that it does not constitute *income* within the Sixteenth Amendment to the Constitution.   Thus Congress has provided the statutory basis for taxing (as ordinary income) stock dividends to the full extent that thereby the stockholder's interest in the distributing corporation's accumulated earnings or profits come to fruition as "incomes" within the meaning of the Sixteenth Amendment.

With respect to the constitutional issue involved the Supreme Court in *Eisner* v. *Macomber*, 252 U. S. 189, said that a proper regard for the genesis as well as the clear language of the Sixteenth Amendment[4] requires that, except as applied to income, it shall not be extended by loose construction so as to repeal or modify the clauses of Article 1 of the Constitution requiring apportionment and that in order to give proper force and effect to both provisions, "it becomes essential to distinguish between what is and what is not 'income' as the term is there used, and to apply the distinction, as cases arise, according to truth and substance, without regard to form."   The Court further said that "Congress cannot by any definition it may adopt conclude the matter, since it cannot by legislation alter the Constitution, * * *."   As to the constitutional meaning of the term "incomes," as involved in that case, the Court reiterated its earlier definition that "Income may be defined as the gain derived from capital, from labor, or from both combined," (with the proviso that it include profit from sale or conversion of capital assets) with further elucidation by several succinct statements directed towards emphasis on a gain or something of exchangeable value, *proceeding from* property, *severed from* the capital however invested, and *coming in,* being *derived;* that is, *received* or *drawn* by the recipient for his *separate* use, benefit and

---

[3] SEC. 115. DISTRIBUTIONS BY CORPORATIONS.

(a) DEFINITION OF DIVIDEND.—The term "dividend" when used in this chapter * * * means any distribution made by a corporation to its shareholders, whether in money or in other property, (1) out of its earnings or profits accumulated after February 28, 1913, or (2) out of the earnings or profits of the taxable year (computed as of the close of the taxable year without diminution by reason of any distributions made during the taxable year), without regard to the amount of the earnings and profits at the time the distribution was made. * * *

*     *     *     *     *     *     *

(f) STOCK DIVIDENDS.—

(1) GENERAL RULE.—A distribution made by a corporation to its shareholders in its stock or in rights to acquire its stock shall not be treated as a dividend to the extent that it does not constitute income to the shareholder within the meaning of the Sixteenth Amendment to the Constitution.

[4] "The Congress shall have power to lay and collect taxes on incomes, from whatever source derived, without apportionment among the several states, and without regard to any census or enumeration."

disposal, as constituting income from property within the concept of the Sixteenth Amendment.

A review of the Supreme Court decisions involving stock dividends (see footnote [5] for a limited discussion of cases as they arose) leads us to the conclusion that, irrespective of the varying provisions of the taxing statutes involved therein, each case was decided upon its own facts and circumstances as establishing whether the receipt of a particular kind of stock dividend is *in fact* taxable. We are led to

[5] In the Revenue Act of 1913 Congress made no specific provision for taxing stock dividends and in *Towne* v. *Eisner*, 245 U. S. 418 (1918) it was held that a dividend of common on common was not intended to be taxed as income. The Revenue Act of 1916, section 2 (a), in defining the term *dividends* provided, that a "stock dividend shall be considered income, to the amount of its cash value." In a test of that provision in *Eisner* v. *Macomber*, 252 U. S. 189 (1920), involving a dividend on outstanding common paid in common stock against earned surplus invested in plant and property for corporate purposes, it was held that under the Sixteenth Amendment Congress lacked the power "to tax without apportionment *a true stock dividend made lawfully and in good faith,* or the accumulated profits behind it, as income of the stockholder [emphasis added]," and that the 1916 Act in imposing a tax because of such a dividend contravened cited clauses of Article 1 of the Constitution. Thereafter (as subsequently noted in the *Koshland* and *Griffiths* cases), although the *Macomber* case dealt with a stock dividend of common on common, it was immediately given a broader interpretation as a basis for tax exemption of stock dividends. In section 201 (d) of the 1921 Revenue Act Congress provided that "A stock dividend shall not be subject to tax * * *" and that statute and subsequent reenactments thereof until the 1936 Act were construed by Treasury Regulations as exempting all dividends paid in stock of the distributing corporation even though in the intervening years the Supreme Court had pointed out in numerous cases involving *reorganizations* that a distinction existed between the *Macomber* type of stock dividend and one which gave the stockholder a different proportionate interest than before. In *Koshland* v. *Helvering*, 298 U. S. 441 (May 18, 1936) involving the basis for determining gain, under the Revenue Acts of 1926 and 1928, upon a sale or other disposition of preferred shares on which a dividend in voting common had been declared, the Court held that the dividend common shares gave the stockholder an interest different than theretofore owned and constituted income within the Sixteenth Amendment even though Congress had not taxed it as of the time of its receipt and therefore the basis of the preferred was not to be apportioned between the two classes of stock. The same rule was applied in *Helvering* v. *Gowran*, 302 U. S. 238 (1937) involving a similar question under the 1928 Act, but where the taxpayer received a dividend of preferred on common when both classes were outstanding. In the Revenue Act approved June 22, 1936, Congress enacted a provision since retained in the law (section 115 (f) (1) of that Act and of the Code) which, while expressed in negative terms, taxes all stock dividends which constitute income within the Sixteenth Amendment. That provision was involved in *Helvering* v. *Griffiths*, 318 U. S. 371 (March 1, 1943) wherein the Government sought to have the Supreme Court reconsider and overrule the *Macomber* case, but the Court did not reach that issue because it concluded that the statute before it did not undertake to impose the tax that was there challenged. The Court made an exhaustive review of the tax legislative history and court decisions on stock dividends and held that the new taxing provision was not intended as a Congressional attack on the law expressed in the *Macomber* case which remained the law except that the *Koshland* decision in effect limited *Macomber* to the kind of stock dividend there dealt with. In *Helvering* v. *Sprouse* and *Strassburger* v. *Commissioner*, decided together at 318 U. S. 604 (April 5, 1943), involving section 115 (f) (1) of the 1936 Act, Sprouse received a dividend of nonvoting common on voting common in a pro rata distribution on both voting and nonvoting common outstanding, and Strassburger, as the owner of the entire stock of a corporation received a dividend of preferred on common. With little discussion the Court held that neither stock dividend was taxable under the statute within the rule in the *Griffiths* case, in that as to Sprouse there was no change in the relationship amongst the stockholders or between them and the corporation and as to Strassburger, he owned the entire interest in the corporation both before and after. The Court distinguished *Koshland,* saying that in the circumstances there disclosed the common stock dividend on preferred with both classes outstanding was income in that there was a resultant essential change in the proportional interest of the stockholder.

the further conclusion that the principles announced in those cases certainly do not rest upon mere matters of the form or nomenclature attending a stock dividend distribution, but, rather, are rooted in the Court's firm conclusions of ultimate fact as to the real substance of the transaction involved, that is, the essential nature of the stock dividend distributed and the attendant interests and rights affected thereby.

In the *Macomber* case the Court concluded that a "true stock dividend made lawfully and in good faith" is not income as distinguished from the normal dividend in money or other divisible property actually distributed out of the corporation's assets for the stockholder's separate use and benefit and thus representing income to the stockholder derived *from* his capital investment. The real substance of the transaction there involved, was that the corporation's undivided profits were so absorbed in its business as to be impracticable of separation for actual distribution, and a readjustment of capital for corporate purposes was made by declaring a dividend of common on common charged against surplus and credited to capital account. Under the circumstances that dividend did not, as the Court said, "alter the pre-existing proportionate interest of any stockholder or increase the intrinsic value of his holding or of the aggregate holdings of the other stockholders as they stood before." The net result was that each common stockholder merely had a pro rata increase in number of certificates evidencing the same proportionate interest he theretofore owned in the corporation as a whole and nothing had been severed from his capital investment or realized as income derived therefrom.

In the *Koshland* case the corporation had outstanding voting common and preferred subject to redemption and preferential rights. It had sufficient cash surplus to pay a dividend on the preferred in cash but elected to pay in common shares. Subsequently the preferred was redeemed. Under the circumstances the receipt of the common did alter the preexisting proportionate interest represented by the preferred shares and further, the distribution of such a dividend disturbed the relationship previously existing amongst all the stockholders and the corporation. The real substance of the transaction was that new interests were thereby derived from the stockholder's capital investment and constituted income when received. Under essentially similar circumstances in the *Gowran* case a dividend on common was paid in preferred shares, which were subsequently redeemed, and the same rule obtained that such a stock dividend constitutes income when received.

The *Griffiths* case involved, as did *Eisner* v. *Macomber*, a dividend of common on common and since the Court construed the statute as

embodying the result of *Eisner* v. *Macomber*, it held the dividend nontaxable.

In the *Sprouse* case the stock dividend of nonvoting common was distributed, against available earnings or profits, on both classes of stock outstanding consisting of voting and nonvoting common. The dividend distribution did not alter the voting rights of the voting common, or its rights to share in dividends and liquidation. The real substance of the transaction was that no essential change was brought about, by the issue of dividend shares, in the proportionate interests amongst all the stockholders. Thus it was held that the stock dividend was not taxable under the *Griffiths* rule as distinguished from *Koshland*.

The *Sprouse* case was decided in the same opinion with the *Strassburger* case wherein the circumstances were that the sole stockholder of common, the only class outstanding, received a dividend in nonvoting preferred declared against available earnings. The dividend stock was not sold or otherwise disposed of. The distribution brought about no substantial change in the stockholder's interest in the net value of the corporation; before he owned it all and after the event he retained all the incidents of ownership. Therefore, the stock dividend was not taxable under the statute when received.

In the instant proceeding the Metal Company, as restated for the purpose of its books of account, had an earned surplus in excess of $1,425,000 on December 31, 1945. On June 30, 1946, that company's current assets included a total of $1,272,354.56 in cash and Government bonds and notes. Its net profits, after estimated income tax, amounted to $215,184.84 for the first six months of 1946 and to $664,798.30 for the entire year 1946. The Metal Company's accumulated earnings and profits to a large extent, were not absorbed in its plant, property, or business for corporate purposes and were available for distribution in cash or other divisible property as dividends on its voting common stock, its only class of capital stock of which 1,002½ shares were outstanding and 83.8 per cent thereof held by Chamberlin and his wife and the balance by five other persons.

Notwithstanding the ability to pay out normal dividends in a very large amount which would represent income to the stockholders, the Metal Company elected to declare two successive stock dividends in December 1946, both of which involved a recapitalization of the corporation by amendment to its charter and a transfer of an amount equivalent to the par value of both issues of stock dividends totaling $1,303,250 from surplus to capital account. After such stock dividends and also cash dividends of $190,475 on outstanding common during 1946, the Metal Company's earned surplus amounted to $596,511.91 at December 31, 1946. The first pro rata stock dividend of $501,250 par value common on outstanding common on Decem-

ber 20, 1946, is not at issue herein, but is a part of the factual circumstances involved. The second pro rata stock dividend of $802,000 par value preferred on outstanding common on December 28, 1946, is in issue.

Looking at the dividend of preferred on common from the standpoint of merely a pro rata distribution of new shares on the then one class of shares outstanding with the result that at the time received the same group of stockholders retained the same proportionate interests in the entire net value of the corporate assets as they had before and disregarding the circumstances and terms of the issue, it might be said that as a matter of form the stock dividend constituted one which fell within the *Sprouse* and *Strassburger* cases. The primary burden of the petitioners' argument is to that effect. However, as established by the cited cases, not form, but the real substance of the transaction is controlling.

If we turn to what we consider to be the real substance of the transaction, the facts show conclusively that the stock dividends were *not* in good faith for any bona fide corporate business purpose. The company was concerned only with the immediate necessity of greatly reducing its accumulated earned surplus not needed in its business, which accumulated surplus otherwise would make it subject to the possible imposition of a surtax provided for by section 102, Internal Revenue Code. At the same time, the company's stockholders were concerned only with immediately realizing for themselves at least $800,000 cash in hand because of the existence of the company's accumulated earnings, but because of the individual tax consequences they wanted the distribution in some form other than as ordinary cash dividends. In order to accomplish these desired ends negotiations were had in which the Metal Company, its stockholders, and the insurance companies participated and came to a complete understanding as to procedure, terms, etc.; the stage was set in detail to meet the requirements of all parties concerned for the two successive recapitalizations of December 20 and 28, 1946, and also for the formal execution of the prearranged contract of sale (the Purchase Agreement) of the preferred dividend shares on December 30, 1946, for cash in the amount of the par value plus dividends accrued to date of delivery. In the Purchase Agreement the Metal Company agreed that on the closing date it had surplus of not less than $350,000 available for dividends on the preferred or for use in redemption thereof. The parties contemplated closing the transaction not later than December 31, 1946.

The terms of the company's amended charter authorizing the issuance of the new preferred and the provisions contained in those shares were specifically dictated by the insurance companies to meet their investment requirements "to give the degree of protection usually

found in a first lien bond issue." The issuance of the two successive stock dividends against a transfer of $1,303,250 from surplus to capital account was not because of investment or use thereof in the corporate business. Instead, it was solely for the security of the new preferred, and for that purpose the amended charter required, so long as any preferred remained outstanding, that the company maintain net working capital in an amount equal to 150 per cent of the par value of outstanding preferred or $750,000 whichever amount was greater and that the company maintain current assets in an amount not less than 200 per cent of current liabilities. Further, so long as the preferred remained outstanding, the amended charter immediately effected a material change not only in the dividend rights of the common shares, but also their voting rights as to further changes in the corporate charter, capital structure, and other matters.

The real purpose of the issuance of the preferred shares was concurrently to place them in the hands of others not then stockholders of the Metal Company, thereby substantially altering the common stockholders' preexisting proportionate interests in the corporation's net assets and thereby creating an entirely new relationship amongst all the stockholders and the corporation. Further, the new preferred was to be redeemed out of the corporation's assets in a comparatively short period of time. With such a predetermined purpose, the dividend was not a true stock dividend made in good faith within the meaning of the cited Supreme Court decisions. A further real and, in fact, the most important, purpose of the issuance of the preferred was to enable the common stockholders to derive cash in hand almost simultaneously, in an agreed amount, solely because of and from their preexisting capital investment in the company. The entire plan was designed primarily for the benefit of the common stockholders whose will was the will of the corporation. The fact that in form no cash or divisible assets of the company were actually withdrawn from the corporation on December 28, 1946, is immaterial, for that condition existed in the *Koshland* and *Gowran* cases. Also, compare *Bazley* v. *Commissioner*, 331 U. S. 737, where, after a recapitalization-reorganization involving an exchange of outstanding shares of a corporation for its short term debenture bonds was not recognized as a tax free reorganization within section 112 of the Code, it was determined that the transaction had the same result, taxwise, as a distribution by the corporation of available cash earnings equivalent to the value of the bonds. In short, the last cited cases applied the doctrine that substance controls as opposed to form.

We think the attendant circumstances and the conditions under which the preferred stock in this case was issued effectively preclude application of the principles of *Strassburger*, *supra*. We conclude that the dividend received by petitioners on December 28, 1946, was

not a true stock dividend, but the equivalent of a cash dividend distribution out of available earnings thus constituting ordinary taxable income in the amount of the value of the preferred shares received. Having in mind the agreed sale price of the preferred shares and the company's agreement as to available surplus for dividends thereon on the closing date of the prearranged transaction, we further conclude that the value of the preferred shares, when received on December 28, 1946, was not less than the equivalent of the amount received from the concurrent sale, as determined by respondent.

The respondent's determination is sustained.

Reviewed by the Court.

*Decision in each proceeding will be entered for the respondent.*

RAUM, *J.*, concurs in the result.

---

OPPER, *J.*, concurring: The suggestion which I find implicit in the present opinion that the actual, rather than potential, sale of the preferred stock is what made this a taxable dividend and distinguishes it from *Strassburger* [1] seems to me to impose additional difficulties in a field already overburdened with problems.[2]

The decision in *Strassburger* being apparently the result of a chronological accident in the presentation of cases, and constituting what would otherwise presumably have been the view of a minority of the justices then composing the Supreme Court [3] should, it seems to me, be limited rigorously to its precise facts. Among other distinctions, the taxpayer there was the sole stockholder of the declaring corporation so that any discussion of a change in proportionate interests flowing from that dividend is unwarranted. Cf., e. g., *Higgins* v. *Smith*, 308 U. S. 473.

But as long ago as 1938 it was held by us in a reviewed opinion without dissent that, in just such a case as this, a dividend of preferred on common where only common had been outstanding was taxable to the several shareholders of the corporation there concerned.

---

[1] *Strassburger* v. *Commissioner*, 318 U. S. 604.

[2] See, e. g., *Edwin L. Wiegand*, 14 T. C. 136, reversed sub nom. *Tourtelot* v. *Commissioner* (C. A. 7), 189 F. 2d 167, affd. (C. A. 3), 51-5 C. C. H. ¶ 9365 (June 26, 1951), 51-4 PH ¶ 72484, reversed on rehearing (C. A. 3), 194 F. 2d 479.

[3] Of the eight justices participating in the *Griffiths* case (*Helvering* v. *Griffiths*, 318 U. S. 371), three dissented on the ground that after the 1936 amendment all stock dividends were taxable. Of the same eight justices participating in the *Strassburger* case these three apparently felt themselves committed by the *Griffiths* decision, but three different ones dissented on the ground that, although some stock dividends were not taxable, that case was ruled by *Koshland* v. *Helvering*, 298 U. S. 441—which of course was the basis for the decision in *Kelly Trust*, *infra*—that preferred on common had always been a taxable dividend even before the amendment. Thus, six out of the eight participating justices would presumably have held the *Strassburger* dividend taxable had that case been presented before the *Griffiths* case. See DeWind, "Preferred Stock 'Bail-Outs' and the Income Tax," 62 Harv. Law Rev. 1126, 1145; Darrell, "Recent Developments in Nontaxable Reorganizations and Stock Dividends," 61 Harv. Law Rev. 958.

*Frank J. and Hubert Kelly Trust*, 38 B. T. A. 1014.[4] This was the result in essence of considering the attributes of the rights of common stockholders as among each other and against the corporation; and the effect of a dividend upon those rights in "that their interest after the dividend became to some extent transferable in parts where before it could be disposed of only as a whole." We went on to say in language that seems to me still peculiarly applicable to such situations as this (p. 1017) : "Petitioner's donors, by transferring the preferred stock, as in fact they did, could then dispose of a part of their interest in the earnings and assets of the corporation without in any way disturbing the distribution of voting control." See also *Helms Bakeries*, 46 B. T. A. 308.[5]

It would be my conclusion that not the fact but the possibility of such a sale as took place here is what made this dividend taxable, and that the significance of the sale here is not that it occurred, and certainly not that the taxability of the dividend depended upon it; but that it is cogent and in fact inescapable evidence of the critical proposition that such a sale could take place and that its effect could be precisely that described in the *Kelly Trust* case, *supra*.

I accordingly concur in the conclusion presently being reached but would arrive at the same one even though the stock in question were not actually the subject of a sale.

ARUNDELL, *J.*, dissenting : In holding that the dividend received by the petitioners was not "a true stock dividend made in good faith," I think that the majority fails to give due consideration to one important factor. That is, that the character of what a stockholder receives from his corporation for tax, as well as other purposes, is definitively settled by the action of the directors of the corporation in making the declaration on which the distribution is based.

If, on the declaration of a dividend, the directors provide for the medium of distribution, the stockholders must take it in the form so provided. A corporate distribution must "be taken as it emanates from the board." *State* v. *B. & O. R. R.*, 6 Gill, (Md.) 363; *Staats* v. *Biograph Co.*, 236 F. 454; *General Utilities & Operating Co.*, 29 B. T. A. 934, affd. 296 U. S. 200. If the directors declare, and the corporation pays, a stock dividend, that is all that the stockholder can receive. What constitutes a stock dividend has not been open to serious question, at least since the decision in *Gibbons* v. *Mahon*, 136 U. S.

---

[4] This decision was at first affirmed on the same theory as that adopted in the opinion below (C. A. 8), 39–4 C. C. H. ¶ 9624 (July 19, 1939). Due, however, to the retroactive amendment to the basis provisions of section 113, that opinion was withdrawn and the case remanded for disposition in accordance with the subsequently enacted legislation, 106 F. 2d 1002.

[5] "* * * It is obvious the preferred stockholders received property rights of actual and exchangeable value which changed the proportionate interest in the net assets of the corporation as between the preferred and the common stockholders." (p. 321.)

549, was handed down in 1890. That decision laid down the proposition that in the receipt of a stock dividend "the proportional interest of each shareholder remains the same. The only change is in the evidence that represents that interest * * *." 136 U. S. at 559, 560. The principle so declared in *Gibbons* v. *Mahon* was the basis of the decision in *Towne* v. *Eisner*, 245 U. S. 418, and has been the touchstone of decision in cases involving the taxability of stock dividends ever since. See the summary of cases in the footnote in the majority opinion.

Whether or not a dividend in stock changes the proportional interest of shareholders needs no lengthy discussion in these cases. We know from the decisions that a dividend of common on common does not, *Eisner* v. *Macomber*, 252 U. S. 189; neither does a dividend of preferred on common where only common is outstanding, *Strassburger* v. *Commissioner*, 318 U. S. 604, while a dividend of common on preferred does work a change and results in the realization of constitutionally taxable income, *Koshland* v. *Helvering*, 298 U. S. 441, even though not taxed by the Revenue Act then in force. In the *Koshland* case, the Court pointed out that "The company had a surplus sufficient to pay the preferred dividends in cash, but *elected* to pay them in common stock" (emphasis added). This is in line with the thought expressed in *Gibbons* v. *Mahon*, *supra*, that whether a "distribution is an apportionment of additional stock representing capital, or a division of profits and income, depends upon the substance and intent of the action of the corporation, as manifested by its vote or resolution * * *."

None of the stock dividend cases turn upon the question of the intent of the stockholder, at the time of the receipt, as to the disposition that he will make of his dividend. He may have no intention or plan at all; he may intend to keep it, to give it away, or to sell it. But I do not see how these considerations can change the character of the distribution as manifested by the "substance and intent of the action of the corporation" in making the distribution. *Gibbons* v. *Mahon*, *supra*. Indeed, in the average case, the corporate directors and officers cannot be expected to know what disposition the stockholders will make of their dividend stock. One of the stockholders in this company did not dispose of its dividend stock.

My view that the character of a distribution depends upon the intent and action of the corporation is supported by the wording of the Code. Section 115(f)(1) speaks of "A distribution *made by a corporation* to its shareholders * * *." It says nothing about what the stockholders do with the distributions. That is taken care of by other sections, such as the gain or loss provisions and the gift tax sections.

I also think that in these cases we do not properly come to the question of good faith. That may be a proper consideration in cases where Congress has provided for the postponement of a tax under facts which, without statutory provision, would result in the imposition of a tax concurrently with the happening of the event. Under the early taxing statutes, reorganization exchanges gave rise to recognizable gains that were currently taxed. *Marr* v. *United States*, 263 U. S. 536. By the enactment of provisions presently contained in Code section 112(b), the tax may be postponed. Under such provisions, it is proper to inquire as to whether there is a good faith compliance with the statutory intent rather than a mere surface compliance. *Gregory* v. *Helvering*, 293 U. S. 465. Here we start with the basic proposition that under the decisions of the Supreme Court stock dividends are not income. The Congress has manifested an intent not to treat them otherwise. *Griffiths* v. *Commissioner*, 308 U. S. 355. Therefore, we have only the clear-cut question of whether the distributions here under consideration were, or were not, stock dividends. If they were, whatever plan there may be for their disposition cannot convert them into income any more than Congress could make them income as it attempted to do in the Revenue Act of 1916 and which gave rise to *Eisner* v. *Macomber*.