WALTER BIALO AND MILDRED BIALO, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 17358-83.     Filed April 30, 1987.

*Randy B. Blaustein*, for the petitioners.
*Gregg M. Weiss*, for the respondent.

OPINION

WRIGHT, *Judge*: Respondent determined a deficiency of $59,077 in petitioners' Federal income tax for the taxable year ending August 31, 1978. The sole issue for decision is whether petitioners are entitled to a charitable contribution deduction with respect to certain stock in their closely held corporation pursuant to the provisions of sections 306(a) and 170(e)(1)(A).[1]

The facts have been stipulated and are so found. The stipulation of facts, together with the exhibits attached thereto, are incorporated herein by this reference.

---

[1]All section references are to the Internal Revenue Code of 1954, as amended and in effect for the year here in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.

Petitioner[2] resided in New Rochelle, New York, at the time the petition in this case was filed. At all relevant times, petitioner was president of Universal Luggage Co., Inc. (Universal). Universal is a New York corporation engaged in the business of manufacturing luggage. Prior to August 1978, Universal had only one class of common stock outstanding which was held as follows:

| Shareholder | Number of shares |
| --- | --- |
| Petitioner | 216 |
| Kenneth Bialo | 28 |
| Sheryl Epstein | 5 |
| Kenneth Bialo (as custodian for Darren Bialo) | 1 |
| Total | 250 |

Kenneth Bialo, Sheryl Epstein, and Darren Bialo are petitioner's son, daughter, and grandson, respectively, and they received all shares in Universal as gifts from petitioner who was the sole shareholder prior to these transfers.

On February 15, 1978, petitioner's accountant, Edward Mendlowitz, prepared a memorandum which was provided to petitioner outlining the tax results following a charitable contribution of stock held in a controlled corporation. In the memorandum, Mr. Mendlowitz discussed the availability of a charitable contribution deduction under section 170 for a contribution of securities. He further explained the tax advantages afforded to a taxpayer on the contribution of appreciated capital gain property under section 170(b)(1)(C), specifically stating that "if the stock were contributed directly to the charity, the taxpayer avoids the tax on capital gain." Mr. Mendlowitz set forth the possible tax benefits resulting from a contribution of stock by the 100-percent stockholder of a corporation when the stockholder makes a charitable contribution of such stock and the stock is subsequently redeemed by the corporation. The tax benefits of such a contribution were illustrated by an example setting forth the tax results to the shareholder if the corporation were to pay a taxable dividend to the shareholder instead of the shareholder's making a charitable contribution of stock. The memorandum noted that care must be taken in structuring such a transaction and that

---

[2]Petitioner Mildred Bialo is a party to this case solely by virtue of having filed a joint income tax return with her husband, Walter Bialo, for the taxable year ending Aug. 31, 1978. The term petitioner will be used hereafter solely to refer to Walter Bialo.

the taxpayer should not enter into a preplanned arrangement whereby the corporation will redeem the stock immediately after the contribution.

On August 18, 1978, Universal declared a pro rata stock dividend of 2,500 shares of 8 percent series A, cumulative, $100 par value, non-voting preferred stock (preferred stock). The stock dividend was distributed to the shareholders as follows:

| Shareholder | Number of shares |
|---|---|
| Petitioner | 2,160 |
| Kenneth Bialo | 280 |
| Sheryl Epstein | 50 |
| Kenneth Bialo (as custodian for Darren Bialo) | 10 |
| Total | 2,500 |

At the time the dividend was distributed, Universal's accumulated earnings and profits were approximately $3,400,000. For the taxable year ending October 31, 1978, Universal had current earnings and profits of approximately $480,000.

Pursuant to section 305(a),[3] petitioner did not include the stock dividend received on August 18, 1978, in his gross income for the taxable year ending August 31, 1978. On August 30, 1978, petitioner contributed 1,000 shares of preferred stock to the New York Community Trust (hereinafter referred to as the Trust). The Trust is an organization described in section 170(c) which administers individual charitable trust funds. Each donor sets up a permanent fund in the Trust under his or her own name and a charitable program for each fund is chosen by the donor and carried out by the distribution committee of the Trust. Each trust is administered by one of 17 banks in New York City. Petitioner established a fund known as a donor-advisory fund which enables the donor to make recommendations to the distribution committee concerning the distribution of income and principal exclusively for religious, educational, and charitable purposes. Petitioner's fund is known as the Mildred and Walter Bialo Fund and the trustee is Bankers Trust Co.

---

[3]Sec. 305(a) provides, in general, that gross income does not include the amount of any distribution of the stock of a corporation made by such corporation to its shareholders with respect to its stock.

As of the date petitioner contributed the stock to the Trust, Bankers Trust determined that the fair market value of the stock was $89,000. This figure was computed by dividing the annual dividend per share by the prime interest rate of 9 percent and multiplying that amount by 1,000 shares.

Universal paid cash dividends to the Trust on the following dates and in the following amounts:

| Date | Amount |
| --- | --- |
| 11/1/78 | $1,600 |
| 2/1/79 | 2,000 |
| 5/1/79 | 2,000 |
| 8/1/79 | 2,000 |

In August 1979, the trustee decided to sell the Universal stock. On August 15, 1979, Universal was offered the opportunity to redeem the stock at its then fair market value of $68,000. The trustee arrived at that value by dividing the per-share annual dividend by the prime interest rate of 11.75 percent and multiplying that amount by 1,000 shares. On October 26, 1979, Universal redeemed the 1,000 shares of preferred stock from the Trust for $68,000.

On September 14, 1981, petitioner wrote to Randy Blaustein, Esquire, describing the above transactions. In his letter, petitioner noted that the non-voting preferred stock which was issued by the corporation and subsequently contributed by petitioner to the Trust was issued in order to enable petitioner to make a contribution of such stock without diluting his control of the corporation. On October 16, 1981, Mr. Blaustein wrote a letter to the IRS in order to supplement correspondence related to a request for technical advice on petitioner's behalf. In his letter, Mr. Blaustein noted that "the issuance of non-voting preferred stock was done on the advice of counsel, to maintain a family tradition of ownership and to avoid the potential of family disharmony in the event of a takeover bid." On December 27, 1984, Mr. Blaustein, in a letter to District Counsel, stated that "the giving of preferred stock instead of common stock was a mechanical oversight on the part of the lawyer who structured the transaction."

By notice of deficiency dated May 4, 1983, respondent disallowed petitioner's deduction of $100,000 based on the

charitable contribution of the stock to the Trust. Respondent determined that the preferred stock contributed to the Trust was section 306 stock, and that petitioner had not established his entitlement to such a deduction pursuant to section 170. Petitioner has the burden of proof with respect to the claimed deduction. *Welch v. Helvering*, 290 U.S. 111 (1933); Rule 142(a). Section 170(a) provides, in general, that deductions are allowed for charitable contributions made by the taxpayer during the taxable year. The amount of the deduction available to the taxpayer is limited with respect to charitable contributions of certain ordinary income and capital gain property. Sec. 170(e)(1).

Section 170(e)(1)(A) applies to charitable contributions made after December 31, 1969. Section 170(e)(1) provided, in pertinent part:

SEC. 170(e). CERTAIN CONTRIBUTIONS OF ORDINARY INCOME AND CAPITAL GAIN PROPERTY.—

(1) GENERAL RULE.—The amount of any charitable contribution of property otherwise taken into account under this section shall be reduced by the sum of—

(A) the amount of gain which would not have been long-term capital gain if the property contributed had been sold by the taxpayer at its fair market value (determined at the time of such contribution), and

(B) in the case of a charitable contribution—

(i) of tangible personal property, if the use by the donee is unrelated to the purpose or function constituting the basis for its exemption under section 501 (or, in the case of a governmental unit, to any purpose or function described in subsection (c)), or

(ii) to or for the use of a private foundation (as defined in section 509(a)), other than a private foundation described in subsection (b)(1)(D),

50 percent (62½ percent in the case of a corporation) of the amount of gain which would have been long-term capital gain if the property contributed had been sold by the taxpayer at its fair market value (determined at the time of such contribution).

Section 306 stock is defined in section 306(c). Specifically, section 306(c)(1)(A) provides that section 306 stock includes "Stock (other than common stock issued with respect to common stock) which was distributed to the shareholder selling or otherwise disposing of such stock if, by reason of section 305(a), any part of such distribution was not includible in the gross income of the shareholder." Under

section 306(a)(1), if the shareholder disposes of such stock at a gain in a disposition which is not a redemption, the amount realized on the disposition of the stock will be treated as ordinary income. However, ordinary income is not recognized to the extent the amount realized exceeds the stock's ratable share of the amount which would have been a dividend at the time the stock was distributed if the corporation had distributed money equal to the fair market value of the stock rather than the stock itself.[4] If the amount realized exceeds the sum of the adjusted basis of the stock and the amount treated as ordinary income, the excess is treated as gain from the sale of such stock. Sec. 306(a)(1)(B).

The property to which section 170(e)(1)(A) applies includes stock described in section 306(a) to the extent that gain on the disposition of such stock would not have been long-term capital gain. Sec. 1.170A-4(b)(1), Income Tax Regs. The amount of a charitable contribution of section 306 stock, therefore, is the excess of the fair market value of the section 306 stock at the time of its contribution over (1) the amount that would be treated as ordinary income or short-term capital gain had the stock been sold at its fair market value at the time of the contribution, and (2) in the case of a contribution to or for the use of a private foundation, 50 percent[5] of the amount of gain which would have been long-term capital gain had the property been sold. Sec. 170(e)(1)(A) and (B)(ii).[6]

Petitioner received the stock which he contributed to the Trust without recognition of gain pursuant to section 305(a), at a time when Universal had sufficient earnings and profits. Such stock is, therefore, section 306 stock and on its disposition, petitioner's charitable contribution deduction is limited to the property's fair market value reduced by the amount of gain that would have been ordinary income had the property been sold.

---

[4] If Universal had distributed cash in the amount of the fair market value of the preferred stock, rather than the stock itself, the corporation's earnings and profits would have been sufficient to require the shareholders to treat such a distribution as a dividend which would have been reported as ordinary income. Sec. 316(a); see sec. 306(c)(2).

[5] Forty percent for contributions made after Oct. 31, 1978. Pub. L. 95-600, sec. 402(b)(2).

[6] The record indicates that the New York Community Trust is an organization described in sec. 170(c), but fails to disclose whether or not it is a private foundation.

Petitioner argues, however, that the distribution and subsequent disposition of the preferred stock at issue in the instant case was not in pursuance of a plan having as one of its principal purposes the avoidance of Federal income tax, and therefore the transaction is not subject to the provisions of sections 306(a) and 170(e)(1)(A) under the exception contained in section 306(b)(4). Section 306(b)(4) provides, specifically, that section 306(a) will not apply —

If it is established to the satisfaction of the Secretary—
    (A) that the distribution, and the disposition or redemption, or
    (B) in the case of a prior or simultaneous disposition (or redemption) of the stock with respect to which the section 306 stock disposed of (or redeemed) was issued, that the disposition (or redemption) of the section 306 stock,

was not in pursuance of a plan having as one of its principal purposes the avoidance of Federal income tax.

The burden of proving that the disposition and redemption of the stock was not part of a plan of which one of the principal purposes was the avoidance of Federal income tax is a heavy one. *Roebling v. Commissioner*, 77 T.C. 30, 59 (1981).

Section 306 was enacted to prevent capital gain treatment on preferred stock bailouts, a distribution and subsequent sale or redemption of preferred stock. S. Rept. 1622, 83d Cong., 2d Sess. 46 (1954). In *Chamberlin v. Commissioner*, 207 F.2d 462 (6th Cir. 1953) revg. 18 T.C. 164 (1952), the taxpayers were shareholders of a corporation with earnings and profits which distributed a dividend of preferred stock on common stock. Three days later, approximately half of the newly issued preferred stock was sold by prearrangement to two insurance companies. The stock was immediately redeemed by the corporation. 207 F.2d at 464-465. The Court of Appeals for the Sixth Circuit held that the taxpayers received a nontaxable stock dividend and properly recognized long-term capital gain on the sale of the preferred stock. This result permitted shareholders to bail out corporate earnings and profits at capital gains, rather than ordinary income, rates.[7]

---

[7]This Court continued to follow the analysis in our opinion in *Chamberlin* despite the reversal by the Sixth Circuit. In *Estate of Rosenberg v. Commissioner*, 36 T.C. 716 (1961), we held that the sale of preferred stock which had been distributed on common stock to large corporate investors, and which contained a mandatory redemption provision, resulted in a

Congress responded to the availability of the preferred stock bailout by enacting section 306 as part of the Internal Revenue Code of 1954. The legislative history of section 306 specifically addresses the congressional intent underlying section 306(b)(4), on which petitioner herein relies:

This subparagraph is intended to apply to the case of dividends and isolated dispositions of section 306 stock by minority shareholders who do not in the aggregate have control of the distributing corporation. In such a case it would seem to your committee to be inappropriate to impute to such shareholders an intention to remove corporate earnings at tax rates applicable only to capital gains. [S. Rept. 1622, 83d Cong., 2d Sess. 241, 243-244 (1954).]

The regulations under this section similarly indicate that isolated dispositions of section 306 stock by minority shareholders will not be considered as dispositions in pursuance of a plan of which one of the principal purposes is the avoidance of Federal income tax. Also, they indicate that if there is a prior or simultaneous disposition of the underlying stock with respect to which the section 306 stock was distributed, the transaction will generally be treated as not in pursuance of such a plan. Sec. 1.306-2(b)(3), Income Tax Regs.

Petitioner, in the instant case, held more than 86 percent of the common stock of Universal both before and after the distribution and redemption of the preferred stock. The contribution of the preferred stock to the Trust was not an isolated disposition of section 306 stock by a minority shareholder who did not have control of the corporation as described in the legislative history. Further, petitioner did not make a prior or simultaneous disposition of the common stock on which the preferred stock was distributed. Rather, petitioner received a distribution of preferred stock on common stock which he contributed to the Trust without diminishing his control over the corporation. Thus, this

---

dividend to the shareholders taxable at ordinary income rates. After examining the transaction, we stated:

"the purpose [of the distribution, sale and redemption] was to siphon off corporate earnings and profits and the importance which we attach to the redemption provision is that it enabled petitioners to accomplish the plan without a permanent impairment of their ownership and control of the corporation. [36 T.C. at 726.]"

Similarly, in the case at bar, petitioner attempted to use Universal's earnings and profits to make a charitable contribution for which petitioner took a deduction while neither recognizing dividend income nor losing control of the corporation.

transaction does not fall within the legislative intent underlying section 306(b)(4).

The taxpayer's purpose is the touchstone of the exception contained in section 306(b)(4). *Roebling v. Commissioner*, *supra* at 59-60. With respect to a taxpayer's claim that section 306(b)(4) applies, "it is reasonable to require the taxpayer to come forward with the facts that would relieve him of his liability." *Fireoved v. United States*, 462 F.2d 1281, 1287 (3d Cir. 1972). In *Fireoved*, the Court of Appeals for the Third Circuit considered the application of section 306(b)(4) to a redemption of stock issued to the taxpayer as part of a recapitalization. The court recognized that the corporation had a legitimate business purpose for issuing the stock, but nonetheless found that because the taxpayer could have achieved the same result by receiving a cash dividend, rather than a stock dividend, and loaned the dividend proceeds to the corporation, " 'one of the principal purposes' of the stock dividend would be for 'the avoidance of Federal income tax.' " 462 F.2d at 1287.

Petitioner herein argues that the purpose of the contribution of preferred stock to the Trust was to insure a steady stream of income to the Trust. A similar result could have been achieved, however, through the issuance of long-term bonds. Unlike the distribution of a preferred stock dividend, the distribution of such bonds would have been taxed to petitioner at ordinary income rates. See Rev. Rul. 80-33, 1980-1 C.B. 69, 70. As in *Fireoved*, petitioner here maintains that there was a purpose, other than the avoidance of Federal income tax, for the distribution and redemption of preferred stock but fails to note that the same result could be obtained by alternative means.

Further, petitioner's argument that the principal purpose of the distribution of the preferred stock was to provide a guaranteed flow of revenue to the Trust is not supported by the record. Instead, petitioner attempts to meet his burden of proof through the use of facts which are not in evidence in this case. Statements contained in the parties' briefs will not be considered as evidence by this Court. *Wisconsin Butter & Cheese Co. v. Commissioner*, 10 B.T.A. 852 (1928); *Phillips v. Commissioner*, 9 B.T.A. 1016 (1927); Rule 143(b). Petitioner's assertion, on brief, that the primary reason for

the donation of preferred stock to the Trust was to ensure a constant stream of income to the Trust is contrary to the various reasons for the contribution set forth in the exhibits attached to the stipulation of facts. Various documents prepared after the stock was contributed and redeemed by the Trust suggest, alternatively, that preferred stock was used in order to avoid dilution of petitioner's share holdings in the corporation; that preferred stock was used to maintain a family tradition of ownership and avoid the potential of family disharmony in the event of a takeover bid, as well as to provide the Trust with a stream of income; and that the use of preferred stock was simply an oversight on the part of the attorney who structured the transaction. The only document admitted into evidence, however, which was prepared prior to the distribution of stock and subsequent contribution to the Trust discusses only the tax advantages of the transaction. It illustrates these tax advantages with an example indicating that the net cash to petitioner, following this transaction, exceeds the amount of cash petitioner would have received, after taxes, by $30,000, had the corporation paid a dividend of $100,000.[8] The memorandum also notes that a contribution of stock in a privately held corporation is likely to result in quick redemption by the charitable organization. The majority shareholder who contributed such stock would thereby be restored to the status of a 100-percent shareholder.

Based on the conflicting record before us, we cannot find that petitioner has brought forward sufficient facts to demonstrate that the purpose of this transaction was not the avoidance of Federal income taxes. Therefore, we hold that petitioner has failed to show that one of the principal purposes of the transaction was not the avoidance of Federal income tax and that the amount of the charitable contribution deduction must be reduced under section 170(e)(1)(A).

---

[8]The example provided to petitioner by his accountant reaches that conclusion as follows: if the corporation distributed $100,000 in cash to petitioner as a dividend, petitioner would have paid $65,000 in income tax on this amount, leaving him with $35,000 in cash. By using the distribution of preferred stock, however, petitioner paid no tax when the stock was distributed by the corporation and received a $100,000 charitable contribution deduction which resulted in a tax savings of $65,000.

Petitioner here has attempted to use a charitable contribution to avoid the consequences of a preferred stock bailout. The use of this mechanism is not sufficient to remove the section 306 taint from the transaction. We note that this Court and other courts have looked favorably on charitable contributions and subsequent redemptions of stock. *Behrend v. United States*, an unreported opinion (4th Cir. 1972, 31 AFTR 2d 73-406, 73-1 USTC par. 9123); *Palmer v. Commissioner*, 62 T.C. 684 (1974); *Humacid Co. v. Commissioner*, 42 T.C. 894 (1964).[9] In *Humacid Co. v. Commissioner, supra,* we stated:

The law with respect to gifts of appreciated property is well established. A gift of appreciated property does not result in income to the donor so long as he gives the property away absolutely and parts with title thereto before the property gives rise to income by way of a sale. * * * [42 T.C. at 913; citations omitted.[10]]

This statement was quoted with approval in both *Behrend* and *Palmer*. In each of these cases, respondent sought to tax the gain on the redemption of the preferred stock to the taxpayers who donated the stock. The courts refused to uphold respondent's determination, finding that the taxpayers had made valid, completed gifts of the stock prior to its redemption by the charities and that, therefore, the gain on the redemption should not be taxed to the donors. While we recognize the courts' approval of these transactions, that is not the issue before us. Respondent is not attempting to attribute the redemption of the stock which petitioner contributed to the trust to petitioners, but rather to apply the statutory restrictions on a charitable contribution of section 306 stock as set forth in section 170(e)(1)(A). As discussed above, petitioner's attempt to invoke the exception contained in section 306(b)(4) has failed.

While petitioner claimed a charitable contribution deduction in the amount of $100,000, the record reflects that the fair market value of the stock at the time of the contribution was $89,000. Pursuant to the provisions of section 170(e)(1)(A) and section 306(a), petitioner must recognize

---

[9]See also *Grove v. Commissioner*, T.C. Memo. 1972-98; *Carrington v. Commissioner*, T.C. Memo. 1971-222; *Fox v. Commissioner*, T.C. Memo. 1968-205.

[10]*Humacid Co. v. Commissioner*, 42 T.C. 894 (1964), was decided prior to the Tax Reform Act of 1969, which provided for the reduction of charitable contribution deductions for gifts of appreciated property.

ordinary income to the extent of the stock's ratable share of the amount which would have been a dividend at the time of distribution if the corporation had distributed money in any amount equal to the fair market value of the stock at time of distribution.

To reflect the foregoing,

*Decision will be entered under Rule 155.*