CARL A. PESCOSOLIDO, SR., AND VIRGINIA L. PESCOSOLIDO, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 44927-86.      Filed July 18, 1988.

*Herbert P. Phillips,* for the petitioners.
*Ronald F. Hood,* for the respondent.

COHEN, *Judge:* Respondent determined the following deficiencies in and addition to petitioners' income tax:

| Year | Deficiency | Addition to tax sec. 6653(a)[1] |
|------|-----------|--------------------------------|
| 1978 | $31,496 | - - - |
| 1979 | 44,798 | - - - |
| 1980 | 13,283 | $664.15 |

Respondent has conceded the addition to tax for negligence. The sole issue for decision is whether petitioners' deductions for charitable contributions of section 306 stock are allowable at fair market value or limited to cost basis in the stock.

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code as amended and in effect during the years in issue.

## FINDINGS OF FACT

Some of the facts have been stipulated, and the facts set forth in the stipulation are incorporated in our findings by this reference. Carl A. Pescosolido (petitioner) and Virginia L. Pescosolido resided in Ipswich, Massachusetts, when their petition was filed.

Petitioner graduated from Deerfield Academy and, in 1934, from Harvard College. He went to work for an oil company because other jobs were not available. In 1949, petitioner invested his savings in the formation of Valley Oil Co. Through this closely held corporation, petitioner distributed fuel oil and gasoline. As petitioner's business grew, petitioner bought out several other small oil companies. Petitioner also established corporations in Maine and other parts of Massachusetts to carry out various aspects of his business.

The growth of petitioner's business was haphazard and unplanned. In 1976, petitioner decided to consolidate his enterprise into one efficient and cost-effective organization. He also planned to effect a "freeze" of the value of his stock for estate tax purposes. In a tax-free reorganization, petitioner merged his six controlled corporations into the Lido Corp. of New England, Inc. (Lido). Through counsel, petitioner obtained a ruling letter from the Internal Revenue Service with respect to the reorganization. The application for a ruling represented, among other things, that nonvoting preferred stock to be issued by Lido would not be redeemed for 5 years. Among other things, the ruling stated: "The Corp. A Preferred to be received by [petitioner] and [William Pescosolido] will constitute 'section 306 stock' within the meaning of section 306(c)."

Immediately after the reorganization, petitioner held all of the 2,500 shares of Lido class A voting stock and 11,708 shares of nonvoting preferred stock. Petitioner's sons, daughter, and brother received nonvoting common stock. The cost basis of petitioner's preferred stock was $16.32 per share.

By receiving all of the Lido voting stock, petitioner retained control over Lido's growth and development. Petitioner's children, who were employed by the company, were given an interest in Lido's welfare through their nonvoting

shares. Petitioner's preferred stock also advanced the interests of petitioner's family by serving petitioner's estate planning needs. Petitioner did not plan at that time to sell or otherwise dispose of the preferred stock.

Petitioner had long been an ardent supporter of Deerfield Academy and Harvard College. As petitioner built his business, he contributed small amounts of cash and donated his time to the Harvard College Schools Committee. Eventually, each of petitioner's three sons graduated from Harvard.

As the energy crises of the early 1970's came to an end, petitioner's fortunes markedly improved. Petitioner felt that he was now in a position to make more substantial donations to Deerfield and Harvard. In 1978 and 1979, petitioner made the following donations of Lido preferred stock:

| Years | Number of preferred shares | Fair market value dollar amount | Recipient |
|-------|------------------|-----------------|-----------|
| 1978 | 500 | $50,000 | Harvard University |
| 1979 | 500 | 50,000 | Harvard University |
| 1979 | 500 | 50,000 | Deerfield Academy |

Deerfield and Harvard were at all material times educational institutions described in section 501(c)(3). In each of the years in issue, the donees of the shares received 7-percent dividends.

At the time of the gifts, petitioner did not seek professional advice concerning the tax consequences of his gifts of preferred stock. His transmittal letter to Harvard stated in part:

I include with this letter my gift of $50,000 in the form of 500 more shares of the 7% Preferred Stock of the Lido Company of New England, Certificate #10.

This is intended to double the original Carl A. Pescosolido Scholarship Fund. The Lido Company of New England being a family owned and controlled Corporation, there is no public market for this stock. It may be redeemed in the future only by the Corporation or by the donor.

The letters of transmittal enclosed endorsed stock certificates, but no formal change of ownership was recorded in the books of the corporation.

In 1984, the Lido preferred stock held by Deerfield and Harvard was exchanged for 8-percent debentures. In 1986,

Lido was liquidated, and as part of the liquidation, the 8-percent debentures were redeemed.

On their tax returns, petitioners deducted the contributions to Harvard and Deerfield calculated at $100 per share as follows:

| Tax year | Contributions deduction dollar amount |
| --- | --- |
| 1978 | $50,000 |
| 1979 | 78,601 |
| 1980 | 21,399 |

The amount deducted in 1978 was reported as a "cash contribution" on the original return for that year and on an amended return filed June 5, 1979. The amount deducted in 1980 represents an unused carryover from 1979.

In a notice of deficiency, respondent disallowed petitioners' charitable contribution deductions in their entirety. Respondent now concedes that petitioners are entitled to deduct their cost basis of $16.32 per share.

OPINION

Section 170(a) allows a deduction for any charitable contribution. Section 1.170-1(c), Income Tax Regs., provides that if the charitable contribution is made in property other than money, the amount of the deduction allowed under section 170(b) is the fair market value of the property on the date of the contribution. In such a case, section 170(e) imposes a significant limitation on the amount of an otherwise allowable deduction. That section provides, in pertinent part, as follows:

SEC. 170(e). CERTAIN CONTRIBUTIONS OF ORDINARY INCOME AND CAPITAL GAIN PROPERTY.—

(1) GENERAL RULE.—The amount of any charitable contribution of property otherwise taken into account under this section shall be reduced by the sum of—

(A) the amount of gain which would not have been long-term capital gain if the property contributed had been sold by the taxpayer at its fair market value (determined at the time of such contribution) * * *

The property to which section 170(e)(1)(A) applies includes stock described in section 306(a). Sec. 1.170A-4(b)(1), Income Tax Regs.

Section 306 is designed to prevent "preferred stock bailouts," in which shareholders extract corporate earnings and profits as capital gain, rather than ordinary income, while retaining ownership of a corporation. *Fireoved v. United States,* 462 F.2d 1281, 1284-1286 (3d Cir. 1972); *Bialo v. Commissioner,* 88 T.C. 1132, 1138-1139 (1987). Section 306(a) generally provides that if a shareholder sells or otherwise disposes of "section 306 stock," the amount realized on the disposition of the stock will be treated as ordinary income. The parties agree that the stock given by petitioner to Deerfield and Harvard was "section 306 stock." Petitioner argues, however, that his "tainted" stock was "purged" by section 306(b)(4), which provides, in pertinent part, as follows:

SEC. 306(b). EXCEPTIONS.—Subsection (a) shall not apply—

\*      \*      \*      \*      \*      \*      \*

(4) TRANSACTIONS NOT IN AVOIDANCE.—If it is established to the satisfaction of the Secretary—
   (A) that the distribution, and the disposition or redemption \* \* \*

\*      \*      \*      \*      \*      \*      \*

was not in pursuance of a plan having as one of its principal purposes the avoidance of Federal income tax.

Petitioner has the burden of proving that neither the distribution nor the disposition of section 306 stock was part of a plan of tax avoidance; that burden is a heavy one. *Bialo v. Commissioner,* 88 T.C. at 1138; *Roebling v. Commissioner,* 77 T.C. 30, 59 (1981).[2]

Petitioner testified, without contradiction, that he received Lido preferred stock in an attempt to "freeze" the value of his equity in the company for estate planning purposes. See *Northern Trust Co., Transferee v. Commissioner,* 87 T.C. 349 (1986), affd. sub nom. *Citizens Bank & Trust Co. v. Commissioner,* 839 F.2d 1259 (7th Cir. 1988). There is no evidence that petitioner planned at the time of

---

[2]Respondent does not argue that the language in sec. 306(b)(4), "If it is established to the satisfaction of the Secretary," creates a special standard of review. See *Fireoved v. United States,* 318 F. Supp. 133 (E.D. Pa. 1970), affd. in part and revd. in part 462 F.2d 1281, 1287 n. 10 (3d Cir. 1972); 3B J. Mertens, Law of Federal Income Taxation, sec. 22:90 (1980): "it is questionable whether this [language] confers any greater prerogative or discretion on the Commissioner than normally resides in him with respect to the usual kind of determination which first is made on the administrative level and which receives a presumption of correctness." See also sec. 3B J. Mertens, *supra* at 38D.35 n. 20.

the distribution to sell or otherwise dispose of the preferred stock. Petitioner further testified that he was an ardent supporter of Deerfield Academy and Harvard College, institutions that he believes changed his life. Petitioner struggled for many years to build a prosperous family business. After years of effort he found himself in a position to repay his alma maters. Petitioner argues that he has thus negated a tax avoidance purpose for disposition of the stock and brought himself within the exception of section 306(b)(4)(A).

According to respondent, section 306(b)(4)(A) will generally apply *only* to minority shareholders who are not in control of the distributing corporation. Thus, he argues, petitioner cannot bring himself within this exception.

Respondent's argument is based on the following language in section 1.306-2(b)(3), Income Tax Regs.:

(b) Section 306(a) does not apply to—

\* \* \* \* \* \* \*

(3) A disposition or redemption, if it is established to the satisfaction of the Commissioner that the distribution, and the disposition or redemption, was not in pursuance of a plan having as one of its principal purposes the avoidance of Federal income tax. * * * For example, in the absence of such a plan and of any other facts the first sentence of this subparagraph would be applicable to the case of dividends and isolated dispositions of section 306 stock by minority shareholders. * * *

The regulatory language pertaining to minority shareholders is prefaced by the words "For example." Thus, an isolated disposition of section 306 stock by a minority shareholder is but one instance in which disposition of "tainted" stock is not part of a tax-avoidance plan. The regulation does not purport to set forth an exhaustive list of all situations that fall within section 306(b)(4). Certainly the statute contains no reference to the taxpayer's percentage of ownership or degree of control of the corporation. Respondent's argument, therefore, is overstated.

Respondent also cites the report of the Senate Finance Committee, S. Rept. 1622, 83d Cong., 2d Sess. 243-244 (1954), which states:

Paragraph (4) of subsection (b) excepts from the general rule of subsection (a) those transactions not in avoidance of this section where it is established to the satisfaction of the Secretary that the transaction

was not in pursuance of a plan having as one of its principal purposes the avoidance of Federal income tax. Subparagraph (A) of this paragraph applies to cases where the distribution itself, coupled with the disposition or redemption was not in pursuance of such a plan. This subparagraph is intended to apply to the case of dividends and isolated dispositions of section 306 stock by minority shareholders who do not in the aggregate have control of the distributing corporation. In such a case it would seem to your committee to be inappropriate to impute to such shareholders an intention to remove corporate earnings at the tax rates applicable only to capital gains.

This legislative history was given persuasive effect in *Fireoved v. United States, supra,* and *Bialo v. Commissioner, supra,* the cases relied on by respondent. In *Fireoved,* the taxpayer contended that distribution and disposition of certain stock received by him as a stock dividend and later redeemed by the corporation fell within the exception of section 306(b)(4)(A). The taxpayer argued that the purpose of the stock dividend was business related, to wit, to obtain additional capital for the corporation from third parties. The Court of Appeals stated that the existence of a business purpose was not inconsistent with a conclusion in the statutory language that "one of [the] principal purposes" of the stock dividend was "the avoidance of Federal income tax." The Court of Appeals stated:

In a situation such as the one presented in this case, where the facts necessary to determine the motives for the issuance of a stock dividend are peculiarly within the control of the taxpayer, it is reasonable to require the taxpayer to come forward with the facts that would relieve him of his liability. Here the stipulation was equivocal in determining the purpose of the dividend and is quite compatible with the thought that "one of the principal purposes" was motivated by "tax avoidance." We hold then that the district court did not err in refusing to apply the exception created by section 306(b)(4)(A). [462 F.2d at 1287; fn. ref. omitted.]

With respect to the redemption of the corporate stock by the corporation, the taxpayer argued that he had sold 24 percent of his underlying common stock in the corporation in order to give greater control to another investor and that the subsequent redemption of a part of his section 306 stock related to that business purpose. The Court of Appeals concluded:

More important, however, is that an examination of the relevant legislative history indicates that Congress did not intend to give capital gains treatment to a portion of the preferred stock redeemed on the facts presented here. [462 F.2d at 1288.]

After quoting S. Rept. 1622, *supra*, the Court of Appeals continued:

Thus, it is reasonable to assume that Congress realized the general lack of a tax avoidance purpose when a person sells *all* of his control in a corporation and then either simultaneously or subsequently disposes of his section 306 stock. However, when *only a portion* of the underlying common stock is sold, and the taxpayer retains essentially all the control he had previously, it would be unrealistic to conclude that Congress meant to give that taxpayer the advantage of section 306(b)(4)(B) when he ultimately sells his section 306 stock. Cf. United States v. Davis, 397 U.S. 301, 90 S.Ct. 1041, 25 L.Ed.2d 323 (1970).

* * * although Mr. Fireoved did sell a portion of his voting stock prior to his disposition of the section 306 stock, he retained as much control in the corporation following the sale of his common stock as he had prior to the sale. Under these circumstances it is not consonant with the history of the legislation to conclude that Congress intended such a sale of underlying common stock to exempt the proceeds of the disposition of section 306 stock from treatment as ordinary income. Accordingly, the district court erred when it held that any of the preferred shares Mr. Fireoved redeemed were not subject to section 306(a) by virtue of section 306(b)(4)(B). [ 462 F.2d at 1289-1290; fn. refs. omitted; emphasis in original.]

*Bialo v. Commissioner, supra,* presented an easier case than *Fireoved v. United States, supra,* or the instant case. In *Bialo,* the taxpayers' closely held corporation issued a pro rata dividend of preferred stock on common stock. The preferred stock was contributed to a charitable trust and then redeemed by the corporation. The evidence did not establish the business purpose of the donation argued by the taxpayers on brief, and:

The only document admitted into evidence, however, which was prepared prior to the distribution of stock and subsequent contribution to the Trust discusses only the tax advantages of the transaction. * * * The memorandum also notes that a contribution of stock in a privately held corporation is likely to result in quick redemption by the charitable organization. The majority shareholder who contributed such stock would thereby be restored to the status of a 100-percent shareholder. [88 T.C. at 1141.]

Thus we held that the amount of the charitable contribution deduction must be reduced under section 170(e)(1)(A).

In this case, there is evidence of the taxpayer's bona fide charitable intent in the disposition of the stock. Evidence of tax motivation is not as clear as it was in *Bialo*. The reasoning of *Fireoved,* however, is persuasive and applies to the facts of this case. Here, as in other areas of the law, the ultimate purpose of a transaction must be inferred from the objective facts rather than from the taxpayer's mere denial of tax motivation. Petitioner was a sophisticated business-man, making deliberate decisions and advised of the nature of section 306 stock at the time that he received it. We must assume that the potential tax consequences of future disposition of the section 306 stock were explained to petitioner by counsel who requested and received the ruling from the Internal Revenue Service in relation to the reorganization. That ruling specifically stated that the stock would be section 306 stock. See *Roebling v. Commissioner,* 77 T.C. at 60.

On his 1978 tax return, petitioner claimed a deduction for the fair market value of the stock as if he had made a $50,000 cash contribution. We are not persuaded that he was unaware that the consequence of such a deduction would be the avoidance of ordinary income tax on the bailout of corporate earnings. His testimony that he did not have tax advice at the time of the gifts does not mean that he was ignorant of the tax benefits that he was claiming.

Petitioners have presented a credible purpose other than income tax avoidance for both the distribution and the disposition of Lido stock. The statutory language and purpose and petitioner's control of the corporation, however, require that the evidence clearly negate an income-tax-avoidance plan to satisfy petitioner's burden. His control of the corporation permits an inference of unity of purpose and plan between the corporate issuer and the shareholder,[3] and the substantial tax savings that would result from the bailout and contribution of appreciated stock permit an inference of income-tax-avoidance purpose. Unlike those of a minority shareholder, petitioner's circumstances do not

[3]See Schneider, "Internal Revenue Code Section 306 and Tax Avoidance," 4 Va. Tax. Rev. 287, 317-319 (1985).

require an exception to section 306 to avoid the trap for the unwary in section 306 or invoke the relief anticipated by Congress in limited circumstances. See generally B. Bittker & J. Eustice, Federal Income Taxation of Corporations and Shareholders, par. 10.05 (5th ed. 1987).

Petitioners' deduction for contributions of section 306 stock to Harvard and Deerfield are therefore limited to his cost basis in the stock, pursuant to section 170(e)(1)(A).

*Decision will be entered under Rule 155.*