Carl A. PESCOSOLIDO, Sr., et al., Petitioners, Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent, Appellee.

No. 89–1049.

United States Court of Appeals, First Circuit.

Heard June 7, 1989.

Decided Aug. 30, 1989.

Steven A. Remsberg with whom Hinckley, Allen, Snyder & Comen, Boston, Mass., was on brief, for petitioners, appellants.

Bruce R. Ellisen, Tax Div., Dept. of Justice, with whom James I.K. Knapp, Acting Asst. Atty. Gen., Gary R. Allen and Gilbert S. Rothenberg, Tax Div., Dept. of Justice, Washington, D.C., were on brief, for respondent, appellee.

Before CAMPBELL, Chief Judge, REINHARDT * and TORRUELLA, Circuit Judges.

REINHARDT, Circuit Judge:

Carl and Virginia Pescosolido appeal from the tax court's decision affirming the Commissioner's determination of tax deficiencies for the Pescosolidos' 1978, 1979, and 1980 tax returns. The tax court agreed with the Commissioner that the Pescosolidos had not sustained their burden of proving that the distribution and disposition of certain Section 306 stock was not in pursuance of a plan having as one of its principal purposes the avoidance of federal income tax. We affirm.

The problem here arose when the Pescosolidos made charitable donations of 1500 shares of Section 306 stock in the Lido Company to Deerfield Academy and Harvard College.[1] They filed joint tax returns for the 1978, 1979, and 1980 tax years and claimed deductions from their federal income tax for their donations based on the fair market value of the stock, which was $100 per share, or $150,000 total.[2] Under Section 170(e)(1)(A) of the Internal Revenue Code, however, the amount of a charitable deduction of stock is reduced by the amount that would have been ordinary income if the stock had been sold by the

---

* Of the Ninth Circuit, sitting by designation.

1. Petitioner Carl Pescosolido was the sole owner of a number of companies in the business of selling gasoline and fuel oil. In 1975, he reorganized his companies into a single corporation, the Lido Company. In this reorganization, Mr. Pescosolido received all of the voting common stock in the company and 11,208 shares of non-voting preferred stock. The parties have stipulated that the non-voting preferred stock is Section 306 stock.

2. Specifically, the Pescosolidos claimed charitable deductions of $50,000 in 1978, $78,601 in 1979, and $21,399 in 1980.

taxpayer at its fair market value. Because of Section 306(a), which treats the proceeds from the sale of Section 306 stock as ordinary income, the amount of the deduction allowable to the Pescosolidos ordinarily would be substantially less than the $150,000 claimed, unless one of the exceptions to the statute is applicable. The Commissioner concluded that the Pescosolidos did not qualify under any of the exceptions. Accordingly, he disallowed the claimed deductions and assessed the resulting tax deficiencies.

The exceptions to the general rule that dispositions of Section 306 stock will give rise to ordinary income are found in 26 U.S.C. §§ 306(b)(1)–(4). The Pescosolidos argued to the tax court that they met the requirements of 26 U.S.C. § 306(b)(4)(A). That subsection states that a disposition of Section 306 stock will receive capital gains treatment "[i]f it is established to the satisfaction of the Secretary that the distribution, and the disposition or redemption, was not in pursuance of a plan having as one of its principal purposes the avoidance of Federal income tax." At trial, Mr. Pescosolido testified that the reorganization took the form it did (1) to permit him to retain control of and participate in the future growth of the Lido Company and (2) to "freeze" the value of a portion of his equity stake in the corporation for estate planning purposes. He also testified that at the time of the reorganization and distribution of the Lido Company Preferred Stock, he had no intention or plan to sell or dispose of the preferred stock in any way. The tax court concluded that, although there was evidence of Mr. Pescosolido's bona fide charitable intent, "the ultimate purpose of a transaction must be inferred from the objective facts rather than the taxpayer's mere denial of tax motivation. Petitioner was a sophisticated businessman, making deliberate decisions and ad-

vised of the nature of Section 306 stock at the time he received it. We must assume that the potential tax consequences of future disposition of the Section 306 stock were explained to petitioner by counsel. . . . We are not persuaded that he was unaware that the consequence of such a deduction would be the avoidance of ordinary income tax on the bail-out of corporate earnings." Accordingly, the tax court concluded that the taxpayer had not met his burden to "clearly negate" that avoidance of federal income tax was not one of the principal purposes of the disposition of the Section 306 stock and affirmed the decision of the Commissioner.[3] *Pescosolido v. Commissioner of Internal Revenue*, 91 T.C. 52, 60 (1988).

The Pescosolidos contend that the tax court's conclusion that tax avoidance was a principal purpose of the disposition of the Section 306 stock is against the weight of the evidence. They attack two inferences in particular as being unsupported by the record: (1) that counsel had explained the tax consequences of Section 306 stock to Pescosolido when Lido Company was formed; and (2) that Pescosolido was aware of the tax consequences of his donations of Section 306 stock at the time he made them.

Initially, we note that the burden of proof in a tax refund suit is on the taxpayer, and the burden under Section 306 has been described as "heavy". *Roebling v. Commissioner*, 77 T.C. 30, 59 (1981); *see also Bialo v. Commissioner*, 88 T.C. 1132, 1138–41 (1987). The determination of the Commissioner is presumed to be correct. To overcome this presumption, the taxpayer has the burden of coming forward with substantial evidence that the Commissioner is wrong. Accordingly, to prevail, the Pescosolidos must show, by means of substantial evidence, that avoidance of federal in-

---

**3.** The Commissioner originally disallowed the deductions in their entirety. However, the parties agreed in the tax court that the Pescosolidos could claim a tax deduction of $16.32 per share, their cost basis in the Section 306 stock, if § 306(b)(4)(A) did not apply. Although the Commissioner is not challenging the stipulation, he correctly points out in his brief that the stipulation does not accurately reflect the rules governing the calculation of the amount of the proceeds of the sale of the Section 306 stock that would have been ordinary income. *See* 26 U.S.C. § 306(a)(1)(A)(ii); Treas.Reg. §§ 1.306–1(b)(2); *see also Mertens Law of Federal Income Tax* § 38D.14 (1989).

**190**

come tax was not a principal purpose of the disposition of his Section 306 stock. We do not believe they have met this burden.[4]

It is true that Mr. Pescosolido testified that he did not receive any tax advice when he made his charitable donations and that the record does not affirmatively establish that he was told of the tax consequences of donating Section 306 stock when Lido Company was established. Nevertheless, a finder of fact could reasonably infer that Mr. Pescosolido knew of the tax consequences at the time he made his donations. Mr. Pescosolido was a successful and sophisticated businessman. He had requested a private letter ruling from the Internal Revenue Service at the time Lido Company was formed and he received the Section 306 stock. The assertions he made in that request were obviously geared toward getting a ruling that the preferred stock was indeed Section 306 stock. Accordingly, the tax court drew reasonable inferences that (1) Mr. Pescosolido had had the potential tax consequences of Section 306 stock explained to him when Lido Company was formed and (2) he was aware that a consequence of the gift of the preferred stock "would be the avoidance of ordinary income tax on the bail-out of corporate earnings." *Pescosolido*, 91 T.C. at 60; *see also*

*Fireoved v. United States*, 462 F.2d 1281, 1287 (3d Cir.1972).[5] Finally, the Pescosolidos contend that the tax court was required to accept Mr. Pescosolido's testimony that he did not have the tax consequences of his charitable donations in mind at the time he made them. We disagree. The tax court must be able to disregard the self-serving statements of the taxpayer and reach its conclusion on the basis of objective factors. Otherwise, Section 306(b)(4)(A) could become the rule, rather than the exception.[6]

While in this case we do not doubt that Mr. Pescosolido's charitable actions were generous, sincere, and praiseworthy, we cannot conclude, given the heavy burden that the taxpayer faces, that the decision below was clearly erroneous. Accordingly, the decision of the tax court is affirmed.

AFFIRMED.

---

**4.** The Commissioner contends for the first time on appeal that the language in Section 306(b)(4)(A), "If it is established to the satisfaction of the Secretary", creates a more deferential standard of review than we would ordinarily use in reviewing the tax court's findings of fact. Even were that contention properly before us, *see, e.g., United States v. Ven–Fuel, Inc.*, 758 F.2d 741, 760 (1st Cir.1985) ("we have regularly eschewed initial consideration at the appellate level of theories 'alien to the record' "); *Codex Corp. v. Miglo Electronic Corp.*, 717 F.2d 622, 629 (1st Cir.1983), and whatever its merits, *see, e.g.*, 3B J. Mertens, *Law of Federal Income Taxation* § 22.90 (1980), we need not decide that question here. Our decision in this case does not depend on whether we review the tax court's findings under our usual "clearly erroneous" standard, *Taylor v. Commissioner of Internal Revenue*, 445 F.2d 455, 459 (1st Cir.1971), or the more deferential standard advanced by the Commissioner.

**5.** The court in *Fireoved* focused on the fact that, although there was a valid reason for the distribution of the Section 306 stock to the taxpayer in that case, there were alternatives that could have been used that would have given rise to

ordinary income for the taxpayer. *Id.* Similarly, Mr. Pescosolido could have made a cash donation to the schools, for example by having Lido Company (1) declare a special dividend or (2) redeem the preferred stock, events that would have resulted in his receiving ordinary income.

**6.** The Pescosolidos also contend that the tax court erred because it considered only the disposition of the Section 306 stock, rather than both the distribution and the disposition of the stock in determining whether Mr. Pescosolido had a tax avoidance purpose. This contention is without merit. If *either* the distribution *or* the disposition of the Section 306 stock was in furtherance of a plan having as one of its principal purposes the avoidance of federal income tax, then the taxpayer cannot meet the requirements of Section 306(b)(4)(A). *See Fireoved*, 462 F.2d at 1286–87; Lischer, 85–3d *Tax Management (BNA), Section 306 Stock*, at A–31 (1988); Schneider, *Internal Revenue Code Section 306 and Tax Avoidance*, 4 Va.Tax Rev. 287, 310 (1985).