RALPH J. AND MARGARET A. GUENTHER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Guenther v. Commissioner
Docket No. 16369-92
United States Tax Court
T.C. Memo 1995-280; 1995 Tax Ct. Memo LEXIS 283; 69 T.C.M. (CCH) 2980; June 22, 1995, Filed *283 Decision will be entered under Rule 155. For petitioners: Sheldon M. Sager, Joseph M. Mentrek, Kimon P. Karas, and Pamela N. Hultin. For respondent: Dawn Marie Krause. COLVIN
COLVIN
MEMORANDUM FINDINGS OF FACT AND OPINION COLVIN, Judge: Respondent determined a $ 95,825 deficiency in petitioners' Federal income tax for 1988 and additions to tax for negligence under section 6653(a) in the amount of $ 4,791 and for substantial understatement of tax under section 6661 in the amount of $ 22,907. After concessions, the issues for decision are: (1) Whether a principal purpose of petitioners' transfer of two properties to the Metropolitan Land Co. in 1988 was tax avoidance. We hold that it was. As a result, petitioners may not use the installment method to report the income from that transfer. Sec. 453(g). (2) Whether petitioners are liable for additions to tax in an amount greater than conceded by petitioners for 1988 for: (a) Negligence under section 6653(a), and (b) substantial understatement of tax under section 6661. We hold that they are. Petitioners also contend that they did not elect out of installment sales treatment for the transfer of those two properties. In light *284 of our holding on issue (1), we need not reach this issue. References to petitioner are to Ralph J. Guenther. Section references are to the Internal Revenue Code in effect during the year in issue. Rule references are to the Tax Court Rules of Practice and Procedure. FINDINGS OF FACT Some of the facts have been stipulated and are so found. 1. Petitioners
Petitioners resided in North Canton, Ohio, when they filed their petition. Petitioner is a realtor. He worked for United Realty & Investment Co. from 1987 to 1991. In 1988, petitioner owned numerous rental properties and held stock or a partnership interest in two S corporations and at least 11 partnerships. Petitioners used the cash method of accounting and reported tax on a calendar year basis in 1988. 2. Metropolitan Land Company
Metropolitan Land Co. (Metropolitan) is an S corporation which was incorporated in Ohio in 1962. In 1988, its principal business was renting and managing apartments and condominiums. On January 18, 1988, Metropolitan's shareholders were petitioner and his daughters: Shareholder
Ownership percent
Petitioner
25.00
Karen Gruber
18.75
Gail Yoder
18.75
Diane Willaman
18.75
Linda Wilson
18.75
*285 Petitioner and Metropolitan are related taxpayers for purposes of section 453(g). 3. Sale of the Properties to Metropolitan
On January 18, 1988, petitioner sold by land contract two parcels of real property: The 47-unit Orchardale/Guilford property and the 24-unit Mansard Village property (the properties) to Metropolitan for $ 1,038,026. Metropolitan agreed to pay $ 738,025.34 of petitioners' outstanding mortgages and to assume a mortgage on which petitioners owed $ 300,000. Metropolitan agreed to pay the outstanding balances on the properties' first and second mortgages as follows: Balance Owed
Property Mortgaged
Mortgagee (on 12/31/87) Mansard Village
Mortgage Services
$ 291,753.21
Guilford property
(42 units) and
Orchardale property
Mortgage Services
378,547.65
Guilford property
(5 units)
First Federal
67,724.48
Total owed on first mortgages:
738,025.34
First American Savings Bank (First American) held a $ 650,000 second mortgage on the properties. In December 1987, the outstanding balance on the First American loan was about $ 430,000. Petitioner owed $ 300,000 on the First American mortgage when he sold the properties to Metropolitan. *286 On January 20, 1988, Metropolitan assumed the $ 300,000 First American mortgage. Baron Kuwatch (Kuwatch) of First American approved petitioners' transfer of the properties to Metropolitan, but did not require or suggest that petitioner make the transfer. First American would have accepted Metropolitan's assumption of liability or cosignature on the mortgages in lieu of the transfer because its primary concern was that the mortgages be paid. The properties are depreciable property for purposes of section 453(g). Petitioners deducted $ 19,681 for depreciation for the Orchardale/Guilford property and $ 16,576 for the Mansard Village property on their 1987 return. Metropolitan deducted $ 17,644 for depreciation for the Orchardale/Guilford property and $ 12,259 for the Mansard Village property in 1988. Petitioners' adjusted basis in the properties when petitioners transferred them to Metropolitan was $ 584,350. Petitioners' remaining available depreciation deduction at that time was $ 404,350 ($ 584,350 minus $ 180,000 basis in land). Metropolitan's depreciable basis in the properties after the transfer was $ 858,026. 4. Petitioners' Return Preparer
James P. MacGregor *287 (MacGregor), a certified public accountant, prepared petitioners' 1988 return. He had prepared petitioners' returns for 20 years. Petitioners relied on MacGregor to correctly prepare their returns. The accounting firm, Hausser & Taylor, prepared petitioners' returns for 1989 and has prepared petitioners' returns until the time of trial. 5. Petitioners' Treatment of Payments from Metropolitan
Petitioners received payments from Metropolitan under the land contract and reported gain as follows: Metropolitan's payments
Gain reported Year
to petitioners
by petitioners
1988
$ 24,634
$ 128,082
1989
327,003
115,694
1990
29,520
10,444
1991
32,446
11,479
1992
270,085
95,556
Total
683,688
361,255
Petitioner understood that the sale to Metropolitan was an installment sale, and he expected it to be reported as an installment sale for tax purposes. Petitioners reported on a Form 4797, Sales of Business Property, filed with their 1988 return, that the "gross sales price" of the properties was $ 738,025. In fact, the sales price was $ 1,038,026. Petitioner knew that the sales price of the properties included both the $ 738,025 that Metropolitan paid *288 for the mortgage balances and the $ 300,000 mortgage that Metropolitan assumed. Petitioners did not compute the gross profit percentage on their sale of the properties in 1988. Petitioners computed and reported a gross profit percentage for their 1989, 1990, 1991, and 1992 returns. The gross profit percentage for the properties is as follows: Sales price
$ 1,038,026 Cost basis
$ 1,200,468
less:
Depreciation
616,118
Adjusted basis
584,350 Gross profit
453,676 Basis for installment sale purposes:
Recapture gain
86,427 Capital gain
367,249 Total gain
453,676 Gross profit percentage:
367,249/1,038,026
35.38%
Petitioners reported the gain from the sale of the properties at issue on Form 6252, Installment Sale Income, from 1989 to 1992. On each of these Forms 6252, in response to the question: "Was the property sold to a related party after May 14, 1980?" petitioners checked the box marked NO. They did not complete Part III, "Related Party Installment Sale Income", on the Forms 6252. Petitioners reported gain from their pre-1988 real property installment sales on Forms 6252 attached to their 1987 and 1988 returns. Petitioners computed their *289 gain on these pre-1988 sales based on a calculation of the gross profit percentages. Similarly, petitioners reported the gains from their 1989, 1991, and 1992 real property installment sales on Form 6252, based on a gross profit percentage calculation. Petitioners included the $ 128,082 taxable gain from the sale of the properties in their passive gain computation on Form 8582, Passive Activity Loss Limitations, filed with their 1988 return. Petitioners reported $ 254,086 of passive losses, and $ 462,366 of passive gain on their 1988 Form 8582. The Schedules K-1 attached to Metropolitan's 1988 return allocated 18.75 percent of the net loss, or $ 16,656, to each of petitioners' daughters, and 25 percent, or $ 22,055, to petitioner. Metropolitan allocated dividends of $ 15,000 (25 percent) to each of petitioners' daughters, and zero to petitioner. In January 1990, respondent notified petitioners that respondent would audit their 1988 return. Petitioners filed their 1989 return in October 1990 after they hired a new C.P.A. 6. Notice of Deficiency
On April 23, 1992, respondent sent a notice of deficiency to petitioners in which respondent determined that petitioners had *290 elected on their 1988 return not to use the installment method of accounting for the sale of the properties to Metropolitan. In the alternative, respondent determined that petitioners could not use the installment method to report income from the sale of the properties. OPINION 1. Tax Avoidance Purpose
Installment sale reporting is not allowed on a sale of depreciable property between related parties if tax avoidance was a principal purpose of the transfer. Sec. 453(g)(1). [1] A taxpayer must establish to the Commissioner's satisfaction that the transfer did not have tax avoidance as one of its principal purposes. Sec. 453(g)(2). Petitioners bear the burden of proving that tax avoidance was not one of the principal purposes of the transfer. Tecumseh Corrugated Box Co. v. Commissioner, 94 T.C. 360, 381 (1990), affd. 932 F.2d 526 (6th Cir. 1991). The evidence must clearly negate an income-tax-avoidance plan to satisfy petitioners' burden of proof. Tecumseh Corrugated Box Co. v. Commissioner, supra at 381-382; see Pescosolido v. Commissioner, 91 T.C. 52, 60 (1988), *291 affd. 883 F.2d 187 (1st Cir. 1989). *292 Petitioners contend that tax avoidance was not a principal purpose for transferring the properties to Metropolitan. Petitioner testified that he proposed the transfer of the properties to avoid foreclosure by First American. Petitioner also testified that petitioners had financial problems and transferred the properties to Metropolitan to secure an extension on payment for matured loans of about $ 2,500,000. Petitioner testified that he did not discuss tax considerations with First American. Petitioner's testimony that he transferred the properties to secure a loan extension is unconvincing because Kuwatch testified that First American did not require petitioner to transfer the properties to obtain a loan extension, and that First American would have accepted Metropolitan's assumption of liability or cosignature on the mortgages in lieu of the transfer. The fact that petitioner's only stated nontax reason for the transfer is unconvincing undermines petitioner's attempt to convince us that tax avoidance was not one of his principal purposes. We do not find significant the fact that petitioner and First American did not discuss tax considerations relating to the transfer of the *293 properties. Petitioner's tax situation was of no interest to First American; its primary concern was that the mortgages be paid. Petitioners argue that they have shown that they had no tax avoidance purpose for the sale because their 1987 depreciation deductions dropped from $ 36,257 before the transfer to about $ 7,476 (25 percent of $ 29,903) after the transfer, and because they realized taxable gain on the transfer. These facts do not convince us that tax avoidance was not one of their principal purposes. Petitioners' depreciation deductions dropped because petitioners' share of the deductions decreased from 100 percent to 25 percent, and because petitioner depreciated the properties over a shorter period than Metropolitan. Sec. 168(c)(1). Despite the drop in depreciation deductions, Metropolitan passed through $ 22,208 of losses to petitioners, and allocated all of the dividends to petitioners' daughters. Petitioners' argument fails to consider all of the depreciation benefits enjoyed by Metropolitan, and thus by petitioners' daughters. We consider the depreciation available to a related buyer in deciding whether a seller has a principal purpose of tax avoidance for selling *294 depreciable property to a related buyer. Considering all of the depreciation available to a related buyer is necessary to fulfill the purpose of section 453(g), which is to "deter transactions which are structured in such a way as to give the related purchaser the benefit of depreciation deductions (measured from a stepped-up basis) prior to the time the seller is required to include in income the corresponding gain on the sale." S. Rept. 96-1000, at 17 (1980), 1980-2 C.B. 494, 503. Petitioners received several tax benefits from the transfer. First, petitioners transferred the properties to Metropolitan (while keeping some control over them), and deferred realizing gain until they received payments over several years from Metropolitan. Second, although petitioners realized $ 128,082 taxable gain on the transfer, because it was passive gain, the gain was partially offset by suspended passive losses. [2] Sec. 469(g)(1)(A). *295 Third, petitioners transferred properties having a $ 404,350 depreciable basis to Metropolitan. After the transfer, Metropolitan had a $ 858,026 depreciable basis in the properties. This is a significant tax benefit because the depreciation available to Metropolitan was more than double that still available to petitioners when they transferred the properties. Petitioners' transfer started the depreciation clock running again with a stepped-up basis. Petitioners failed to identify the sale of the properties to Metropolitan as a related party sale on their Forms 6252 for 1989 to 1992. They answered "NO" to the question "Was the property sold to a related party after May 14, 1980?" Also, they did not complete Part III, "Figure the Taxable Part of Related Party Installment Sale". The instructions to Form 6252 provide that "A related party is your spouse, child, grandchild, parent, brother, sister, or a related corporation, S corporation, partnership, estate, or trust." The instructions also state that "If you sell depreciable property to a related party as defined in section 1239(b), the installment sale rules do not apply, unless it is established to the satisfaction of the Internal *296 Revenue Service that tax avoidance was not a principal purpose for the sale." Petitioner was an experienced realtor who had many investments in real property in 1988. His failure to identify the Metropolitan transfer as a related party sale, if undetected, would have enabled petitioners to use installment method reporting without showing that they did not have a tax avoidance purpose and to offset suspended passive losses, if any, from the properties against the gain from the transfer, which would otherwise be prohibited by section 469(g)(1)(B). Petitioners claim that respondent has not established any evidence of tax avoidance purpose. However, petitioners, not respondent, have the burden of proof. We are not convinced that petitioners did not have tax avoidance as a principal purpose for the transfer. We hold that petitioners may not use installment sale reporting for the transfer. 2. Additions to Tax
Petitioners concede that they are liable for the additions to tax for negligence and substantial understatement relating to all items determined in the notice of deficiency except as relates to the installment sale issue. They argue that they are not liable for additions *297 to tax relating to their treatment of the transfer to Metropolitan. a. Negligence
Section 6653(a) imposes an addition to tax equal to 5 percent of the underpayment of tax if any part of the underpayment is due to negligence or intentional disregard of rules or regulations. Negligence is a lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Zmuda v. Commissioner, 731 F.2d 1417, 1422 (9th Cir. 1984), affg. 79 T.C. 714 (1982); Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967), affg. in part and remanding in part 43 T.C. 168 (1964) and T.C. Memo. 1964-299; Neely v. Commissioner, 85 T.C. 934, 947 (1985). Petitioners claim that they are not liable for the addition to tax for negligence attributable to the reporting of gain on the sale of the properties because they relied on MacGregor to properly prepare their 1988 return. Good faith reliance on the advice of a competent, independent tax professional may offer relief from the imposition *298 of the negligence addition. United States v. Boyle, 469 U.S. 241, 251 (1985); Leonhart v. Commissioner, 414 F.2d 749, 750 (4th Cir. 1969), affg. T.C. Memo. 1968-98; Otis v. Commissioner, 73 T.C. 671, 675 (1980). Petitioners bear the burden of proving that their reliance upon professional advice was reasonable. Rule 142(a); Freytag v. Commissioner, 89 T.C. 849, 888 (1987), affd. 904 F.2d 1011 (5th Cir. 1990), affd. 501 U.S. 868 (1991). Petitioners conceded that they negligently reported interest income, capital gain/loss, the sale of property B on Form 4797, guaranteed payments, Schedule E depreciation and interest expense, and Schedule A real estate taxes and investment interest on their 1988 return. Despite their claim that they did not concede the negligence addition "on any grounds other than de minimis effect", section 6653 applies to the entire underpayment when it applies to any part of the underpayment. Sec. 6653(a). Our Rules provide that stipulations between the parties *299 are binding, and may not be changed unless "justice requires." Rule 91(e). We will enforce such stipulations "unless manifest injustice would result." Bokum v. Commissioner, 992 F.2d 1132, 1135-1136 (11th Cir. 1993), affg. 94 T.C. 126 (1990); Bail Bonds by Marvin Nelson, Inc. v. Commissioner, 820 F.2d 1543, 1547 (9th Cir. 1987), affg. T.C. Memo. 1986-23; Jeffries v. United States, 477 F.2d 52, 55 (9th Cir. 1973). Petitioners' reliance on MacGregor was not reasonable because they knew that they sold the properties for $ 1,038,026, yet reported the sale price on Form 4797 as $ 738,025. If petitioners had reviewed their return, they would have noticed the discrepancy between the actual sale price and the amount reported on their return. If petitioners wanted to use the installment method, then they incorrectly reported the sale on Form 4797. If they wanted to elect out of the installment method, then they reported the wrong amount. Petitioners either did not carefully review their return or, if they discovered the errors in the calculation *300 of the gain on the transfer of the properties, they did not correct it. Finally, petitioners offered no evidence showing what information or documentation they provided to MacGregor. Leonhart v. Commissioner, supra; Weis v. Commissioner, 94 T.C. 473, 487 (1990); Pessin v. Commissioner, 59 T.C. 473, 489 (1972) (taxpayers must provide their agents with all relevant information necessary to prepare the return). We hold that petitioners are liable for the addition to tax for negligence because they have not shown that they reasonably relied on MacGregor. b. Substantial Understatement Under Section 6661
Section 6661(a) imposes an addition to tax of 25 percent of the amount of any underpayment attributable to a substantial understatement of income tax in any taxable year. A substantial understatement exists if in any year the amount of the understatement exceeds the greater of $ 5,000 or 10 percent of the amount required to be shown on the return. Sec. 6661(b)(1). An understatement, for purposes of this addition to tax, is the amount required to be shown on the return less the amount *301 actually shown on the return. Sec. 6661(b)(2). Petitioners contend that respondent should have waived the addition to tax under section 6661 because there was reasonable cause for the understatement and they acted in good faith in relying on MacGregor in filing their 1988 return. The Secretary may waive the penalty if the taxpayer shows that there was reasonable cause for the understatement and that the taxpayer acted in good faith. Sec. 6661(c); Vorsheck v. Commissioner, 933 F.2d 757, 759 (9th Cir. 1991); Cloud v. Commissioner, 97 T.C. 613, 631 (1991). The Secretary's authority under section 6661(c) to waive all or part of the section 6661 addition to tax is subject to review under an abuse of discretion standard. Mailman v. Commissioner, 91 T.C. 1079 (1988). We hold that petitioners have not shown that there was reasonable cause for the understatement or that they acted in good faith. As discussed above, petitioners either did not carefully review or did not correct their return. Petitioners offered no evidence showing what information or documentation they provided to MacGregor. *302 Taxpayers cannot blindly rely on their accountant to prepare returns if they have not provided necessary tax information. Weis v. Commissioner, supra; Pessin v. Commissioner, supra.There is no abuse of discretion in respondent's refusal to waive the addition, and petitioners have not shown that they had reasonable cause for the understatements or that they acted in good faith. Accordingly, respondent's determinations as to the section 6661 addition to tax are sustained. To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
1. Sec. 453(g) provides in part: (g) Sale of Depreciable Property to Controlled Entity. -- (1) In general. -- In the case of an installment sale of depreciable property between related persons -- (A) subsection (a) shall not apply, (B) for purposes of this title -- (i) except as provided in clause (ii), all payments to be received shall be treated as received in the year of the disposition, and * * * (C) the purchaser may not increase the basis of any property acquired in such sale by any amount before the time such amount is includible in the gross income of the seller. (2) Exception where tax avoidance not a principal purpose. -- Paragraph (1) shall not apply if it is established to the satisfaction of the Secretary that the disposition did not have as one of its principal purposes the avoidance of Federal income tax. (3) Related persons. -- For purposes of this subsection, the term "related persons" has the meaning given to such term by section 1239(b) * * *↩
2. Alternatively, this could be viewed as a mitigation of petitioners' inclusion of the $ 128,082 gain in income. However, under that analysis, petitioners fare no better because the partial offset of gain by suspended passive losses would have been prohibited by sec. 469 (g)(1)(B) had petitioners identified the sale as one to a related party.↩